**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MAURICE NELSON & CHRISTI MARSHALL, individually and on behalf of all others similarly situated, | ) ) ) ) | Case No: 17-cv-7697 |
| Plaintiffs, | ) ) | Judge John Z. Lee |
| v. | ) ) | |
| PACE SUBURBAN BUS, MARGARET MURRY, in her individual capacity and in her Official capacity of Division Manager of Pace Suburban Bus – Heritage Division, | ) ) ) ) ) | Mag. Judge Jeffrey Cole |
| Defendants. | ) ) | |

**SECOND AMENDED CLASS ACTION COMPLAINT**

Plaintiffs Maurice Nelson and Christi Marshall, individually and on behalf of a class of similarly situated individuals, by and through their attorneys, bring this action against Defendants Pace Suburban Bus and Margaret Murry, in her individual capacity and in her official capacity as Division Manager of Pace Suburban Bus – Heritage Division (collectively "Defendants"), and for their Second Amended Class Action Complaint, allege the following:

**NATURE OF THE ACTION**

1.      Under Murry, African American Pace employees including Plaintiffs have been subject to a pattern of discriminatory treatment with respect to disciplinary actions, run picks, and opportunities for promotion and terminations – particularly as compared to Caucasian operators. Nelson and Marshall witnessed and personally experienced acts of racially motivated discrimination at Pace.

2.      Like other African Americans at the Heritage Garage Murry oversees, Nelson and Marshall were subjected to systematic race discrimination including, but not limited to, disparate

1

treatment with respect to discipline and the decisions to terminate their employment – particularly as compared to Caucasians. Caucasian employees engaging in similar conduct are not disciplined or receive a lesser warning than African American employees. Moreover, African American employees are subjected to termination of employment for acts which Caucasian employees are not.

3.     PACE's policies permitting Murry discretion in determining run picks, conduct that will be subject to disciplinary action (actions which lead to termination) and recommendations for promotion disparately impact African American employees. Pace's polices regarding run picks, disciplinary action, promotion and termination adversely impact African Americans and has the effect of discriminating against them.

4.     This lawsuit arises under the Civil Rights Act of 1866, as amended, 42 U.S.C. §§ 1981, 1985, and 1986, ("CRA of 1866"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII"), the Equal Protection Clause of the Fourteenth Amendment and/or the CRA of 1866 through 42 U.S.C. § 1983, the Illinois Human Rights Act, 775 ILCS § 5/1 *et seq*. ("IHRA") and the Illinois Civil Rights Act of 2003, 740 ILCS 23/1 *et seq*. ("ICRA").

## JURISDICTION, VENUE, AND PARTIES

5.     This Court has jurisdiction over Plaintiffs' federal law claims pursuant to 28 U.S.C. § 1331. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) and can exercise that jurisdiction on Plaintiffs' ICRA claim pursuant to 740 ILCS 23/5(b).

6.     Venue is proper in this judicial district as the facts and events giving rise to Plaintiffs' claims occurred in this judicial district.

2

7.     Maurice Nelson ("Nelson") is an African American man domiciled in this judicial district.  Pace employed Nelson from October 20, 2014, to approximately October 25, 2016.  Pace employed him as a full-time bus operator at the Heritage Division Garage.

8.     Christi Marshall ("Marshall") is an African American woman domiciled in this judicial district.  Pace employed Marshall from October 19, 2015, to approximately October 17, 2017, though she was terminated and reinstated during that period.  Pace employed her as a full-time bus operator at the Heritage Division Garage.

9.     Plaintiffs were "employees" of Pace Suburban Bus within the meaning of Title VII and the IHRA.

10.     Defendant Pace Suburban Bus ("Pace") provides bus and other transportation services throughout Chicago's six county suburbs and conducts business within this judicial district.   Pace operates from 11 locations including its Headquarters, located at 550 West Algonquin Road, Arlington Heights, Illinois, 60005.

11.     Pace is a regional governmental body created by and acting pursuant to the Regional Transportation Authority Act, 70 ILCS 3515/1.01 *et seq*.  Pace is organized, operated and funded pursuant to state and federal law.

12.     Pace is an "employer" within the meaning of Title VII and the IHRA.

13.     Pace is a "unit of State, county or local or government in Illinois" within the meaning of the ICRA.

14.     Pace operates the Heritage Division Garage, located at 9 Osgood Street, Joliet, Illinois 60433.  The Heritage Division Garage serves the southwest suburbs, including Joliet.

15.     Defendant Margaret Murry, a Caucasian, has been employed by Pace since approximately October 12, 1993.

16.     From September 20, 1999, through the date of filing of this Complaint, Ms. Murry served as the Division Manager of the Heritage Division.

17.     Throughout her employment with Pace, Division Manager Murry has been accused of race discrimination against African Americans on multiple occasions, and to Plaintiffs' knowledge, has received no disciplinary actions for discrimination or creating an environment where numerous African Americans believe they are being discriminated against based on their race or color.

## FACTUAL ALLEGATIONS

**Pace's Operation at the Heritage Garage**

18.     Since approximately 2000, Murry has been responsible for operations at the Pace Heritage Garage.

19.     From approximately 2005 through the date of filing of this Complaint, Pace typically employed approximately eight part-time bus operators and approximately thirty-five full-time bus operators at the Heritage Division Garage.

20.     Since at least 2011, and potentially earlier, Pace's employment practices have applied in a generally consistent fashion to all non-supervisory individuals employed at the Heritage Garage who drive or move Pace buses as part of their job duties (e.g., full or part-time operators, mechanics and their helpers, servicers, etc.).

21.     Since at least 2011, Murry was responsible for enforcement of Pace's employment policies and practices at the Heritage Division Garage for individuals who drive or move Pace buses as part of their job duties, including policies and practices regarding disciplinary actions, tardiness/absenteeism, recommendations for termination, promotion, and hiring.

22.     Bus operators drive commuter buses or other vehicles which make stops along the geographic route to their destination. Each assigned route is referred to as a "run." Any given shift may have multiple "runs," sometimes with a break of hours in between morning "run" and an evening "run."

23.     Since well before Plaintiffs' employment, Pace maintained written policies regarding performance, discipline, bus accidents or moving violations, absenteeism and tardiness. Under these policies, employees could be disciplined for missing work completely with or without an excuse (an "incidence of absence"). Employees also could be disciplined for arriving late, but not too late to be available to complete some work (a "half missout"), or for arriving too late to complete any assigned work (a "full missout"). Employees could also be disciplined for arriving late to the line-up in order to relieve a driver (a "street missout"). Rules regarding missouts and incidences of absence applied to each report time for a run.

24.     Whether bus operators were assigned work when they arrived late was within the discretion of Murry. Whether bus operators received an incidence of absence, a full missout, a half missout, or a street missout also was within the discretion of Murry.

25.     Pace typically promotes employees from within. Part-time bus operators who incurred accidents, moving violations, speeding tickets or other discipline were not eligible for hire as full-time bus operators, an employment opportunity with potential for increased earnings.

26.     Full-time bus operators who incurred accidents, moving violations, speeding tickets or other discipline for work rule violations were not eligible to serve as relief supervisors or for promotion to line instructor or dispatcher/supervisor, both of which were employment opportunities with potential for increased earnings, including increased pension benefits.

27.     Murry affected eligibility for promotion by exercising discretion on disciplinary matters, by determining who would be recommended for promotion, and/or participating in promotion selection decisions.

28.     Although supervisor/dispatchers are responsible for reporting facts regarding violations of Pace's employment policies to Murry, decisions about when and whether to enforce Pace's written employment policies are and have been within the discretion and authority of Murry since at least 2011. Under Murry, African Americans were subject to heightened scrutiny and held to different standards than non-African Americans.

29.     Since at least 2011, Murry exercised her authority to discipline and/or terminate employment of bus operators, including Plaintiffs, in a way that systematically disadvantaged African American employees at the Heritage Garage. Murry's enforcement of Pace's written policies negatively impacted African Americans' employment opportunities resulting in suspensions, denied promotional opportunities, terminations, and/or forced resignations.

30.     According to Pace's own Human Resources information system, African Americans have been involuntarily terminated from employment at rates that are significantly disproportionate from their representation in the workforce. Many involuntary terminations are the culmination of a progressive disciplinary process and, therefore, are preceded by suspensions or other disciplinary actions, which also disparately affect African Americans.

31.     Although African Americans have historically made up approximately 60% of the individuals who drive or move busses as part of their job duties, approximately 23 of the 25 individuals involuntarily terminated are African American according to data in Pace's Human Resources information systems. Only 1 of those 25 individuals was Caucasian.

6

32.     Whether compared to the rates of terminations for all non-African American employees who drive or move busses as part of their job duties or just Caucasian employees, the probability of similarly situated African American employees being involuntarily terminated at the rates reflected in Pace's Human Resources information system absent race being a factor is less than 1 in 1,000.

33.     According to information from Pace's Human Resources information system, African American Part-Time Operators hired since January 1, 2011, were promoted to Full-Time Operators at significantly lower rates than non-African American Part-Time Operators who were hired during that same time period.  Defendants promoted over two-thirds of Caucasian Part-Time Operators and all non-African American Part-Time Operators to Full-Time Operator. Contrastingly, Defendants promoted barely more than half of similarly situated African American Part-Time Operators.

34.     For promotions other than from Part-Time Operator to Full-Time Operator promotions, Pace's Human Resources information system shows Caucasian employees at Pace who drive or move busses received the same number of promotions as similarly situated African American employees.  As compared to the percentage of African Americans who drive or move busses as part of their duties, approximately double the percentage of similarly situated Caucasian employees received promotions.

35.     Murry has also disadvantaged African American employees by preventing them from transferring to a different garage. The Heritage Garage is the lowest paying garage operated by PACE.

36.     Non-African American Pace employees at the Heritage Garage who have benefited by not receiving discipline and/or not being terminated include, but are not limited to, Karen

Spakausky, Eric Weiss, Tracy Mack, Jacob Mack, Raymond Ulrich, Carman Szymanski Brown, Michael Nielson, and Anthony Caputo.

37.     African American Pace employees at the Heritage Garage who have been disciplined, forced to resign and/or terminated include, but are not limited to, Plaintiffs, Annette Abrams, Alaina Cook, Billy Drain, Carissa Biddle, Carmella Carmichael, Byron McCullum, Kevin Copeland, Adrian Glass, Fonn Moore, Koshanda Poe, Cameron Roberts, Dwight Grady, Patricia Nicholson, Bernard Johnson, Soniaya Hall, Dion Lewis, Alan Nash, Philip Harris Nicole Shaw, Kevin Shelton, Cynthia Sherrod, Kimberly Toombs, Dorrell Long, and Robert Smith, among others.

38.     As an example of the double standard to which African American employees are held, one African American bus operator faced disciplinary action for refusing a passenger's request to be let off the bus at a location not marked as a stop on the route when, under Pace's written rules, he would have faced disciplinary action had he allowed the passenger to exit the bus at an un-marked stop.

39.     The unlawful conduct alleged herein constitutes a continuing violation of applicable anti-discrimination laws.

40.     If not for her and their employment with Pace Suburban Bus, Murry would have no ability to affect the terms, conditions, privileges or benefits of Plaintiffs' or other African Americans' employment with Pace Suburban Bus.

**Defendants' Unlawful Treatment of Nelson**

41.     Throughout his employment, Defendants disciplined Nelson more harshly than Caucasians because of his race or color, including with respect to subjective and discriminatory enforcement of Pace's employment policies.

42. Nelson began working for Pace as a part-time bus operator in its Heritage Garage location on October 20, 2014.

43. Nelson successfully completed the Pace bus operator training program. Pace promoted Nelson to full-time status on September 14, 2015.

44. On October 20, 2016, Nelson was in the process of completing his first of two shifts for the day. He parked the bus he was operating as close as possible to the bus in front without making contact, consistent with Pace policy to avoid creating dangerous conditions for other drivers. Management, maintenance personnel, line instructors, and safety personnel also instruct drivers to park as close as possible to the bus in front to allow the largest amount of buses possible to fit into the relatively small garage space.

45. When he finished parking the bus, he ensured the bus was close enough to the bus in front of him. He noted his bus was sufficiently close to the bus in front of his without touching, and completed his run by turning in his bus sign and pouch. Nelson then took his scheduled five-hour break.

46. Nelson returned from his break approximately fifteen minutes early. Upon returning from his break, Division Manager Margaret Murry summoned Nelson into her office. When they arrived at Murry's office, Nelson discovered that Superintendent of Transportation David Dines was in the office as well. Murry and Dines did not inform Nelson that he could have union representation at the meeting. Murry asked Nelson a slew of vague and accusatory questions, such as is there anything Murry should know about, or is there anything Nelson should tell Murry. Nelson, taken aback by the interrogation, did not know why he was being questioned by Murry and Dines.

47.     Murry finally claimed that Nelson hit the bus in front of him when returning from his previous shift.  She also claimed that the buses were damaged as a result of the supposed incident.  Murry immediately suspended Nelson and sent him home pending a disciplinary meeting.

48.     Contrary to Murry's accusation, Nelson did not make contact with the bus when he parked as instructed at the end of his shift.  If he did, the contact was so minimal he did not notice and, therefore, did not report any incidents under Pace's reporting policy or procedure.

49.     Under Pace's policy, operators are permitted to have up to three "avoidable" incidents without being subject to termination.  Nelson always reported any incidents per Pace policy and procedure.  Had Nelson reported the incident, it would only have been his second "preventable" accident and he would not have been terminated.  Thus, Nelson had no incentive to conceal the incident.

50.     On October 25, 2016, Nelson attended a disciplinary meeting with Union President Tom Flynn, Dines, and Murry in attendance.  During the meeting, Nelson explained he was not aware of any contact with the bus.  Nelson and his union representation requested pictures and video of the specific buses that were allegedly damaged from the parking incident.  Murry and Dines did not produce any pictures identifying the buses that were supposedly damaged. Moreover, the video of the incident did not show Nelson's bus contacting another bus.  Nelson believes the bus he had been operating was kept in service without any necessary repairs. Nonetheless, as a result of the meeting, Pace terminated Nelson's employment.

51.     On October 27, 2016, Nelson appealed the termination decision, and a hearing on the matter was held on November 16, 2016.Nelson, Regional Division Manager Mark Klafeta ("Klafeta"), Dines, and Flynn attended the meeting.

52. On November 22, 2016, Nelson learned through a voicemail by Tom Flynn that the appeal was denied.

53. On approximately April 17, 2017, Nelson filed a charge of discrimination with the EEOC. Pursuant to the EEOC's worksharing agreement with the IDHR, his EEOC charge was cross-filed with the IDHR.

54. The EEOC issued Nelson a Dismissal and Notice of Rights dated October 5, 2017. The Notice was not received because it was delivered to the wrong address. The EEOC resent the Notice, and Mr. Nelson's representative received it on November 27, 2017.

**Defendants' Unlawful Treatment of Marshall**

55. Throughout her employment, Defendants disciplined Marshall more harshly than Caucasians because of her race or color, including discipline issued with respect to subjective and discriminatory enforcement of Pace's employment policies.

56. Marshall began working for Pace as a part-time bus operator in its Heritage Garage location on October 19, 2015.

57. Marshall attended the Pace training program for the first few weeks of her employment. Marshall, Patricia Nicholson, an African American, and Michael Neilson, a Caucasian, ("Neilson") participated in the bus operator training program. After approximately two weeks of classroom training and testing, instructor(s) train the group on driving a Pace bus. Group members take turns driving the bus, while the instructor(s) provides instruction and feedback while other group members observe.

58. Pace policy and instructors make clear that any tardiness during the training program will result in immediate termination. Pace policy and instructors also make clear that any driving incident during the training program will result in immediate termination.

59.     During the classroom training and testing portion, Neilson arrived late to work, and was not terminated for his tardiness.

60.     During the bus training, Neilson had a preventable accident while taking his turn to drive the bus.  On the day in question, Training and Safety Manager Anthony Caputo ("Caputo"), a Caucasian, was acting as the group's instructor.  Neilson was speeding, driving carelessly, and ignoring Caputo's directions.  As a result, Neilson crashed the bus into a fixed construction sign.  Neilson was not terminated for the incident because Murry exercised her discretion not to discipline or terminate him.

61.     Marshall successfully completed the Pace training program.  Caputo, the Heritage Garage Safety and Training Manager, constantly informed drivers that if they have any questions or concerns about their rides they should seek his advice or review.

62.     Marshall was promoted to full-time bus operator on March 7, 2016.

63.     On September 1, 2016, Marshall asked Caputo, per his instructions, for some feedback regarding her shift that day.  She specifically asked for feedback regarding the day's trip, including her difficulty in merging when a car did not permit the bus to enter the highway.  Caputo told Marshall that he would get back with her after the Labor Day Weekend because he was leaving early for the day.

64.     Approximately one week later, at the conclusion of her shift, Marshall turned in a report to Caputo related to a food truck that clipped her bus earlier in the day.  When Marshall turned in the report, she again requested Caputo to review the tape from her September 1, 2016 ride to receive feedback and to improve her driving abilities.  Caputo left the room to consult with Murry.  Caputo eventually returned to the room, and informed Marshall that she was free to leave for the day and the matter was under investigation.

65. Approximately three or four days later, Marshall completed her first of two shifts for the day. Before she began her second shift, Murry called Marshall into her office. Murry informed Marshall that she was suspended without pay for purportedly making contact with a car on September 1, 2016, and not reporting the incident.

66. Despite Murry's accusation, Marshall did not make contact with another vehicle on the day in questions, and thus had no obligation to report anything. Marshall reported numerous incidents in the past, and never failed to report her bus contacting another vehicle.

67. On or around September 14, 2016, Marshall attended her first meeting to determine what, if any, discipline would be imposed. Murry, Superintendent of Transportation David Dines, Union President Tom Flynn, and Union Representation Luis Campagna attended the meeting. At the conclusion of the meeting, Murry informed Marshall that her employment was terminated.

68. Marshall appealed the termination decision. The above-listed individuals, in addition to Regional Division Manager Mark Klafeta ("Klafeta"), a Caucasian, met to attend the termination appeal. At the conclusion of the meeting, Klafeta indicated he doubted that Marshall even wanted her position back, despite her asserting the opposite. Klafeta stated that he needed to sleep on it before he could determine whether to reverse the termination. Marshall was notified via a letter dated September 29, 2016, that Pace upheld the termination.

69. Marshall grieved her termination and participated in a labor arbitration on February 10, 2017. On approximately April 17, 2017, while awaiting decision on her arbitration, Marshall filed a charge of discrimination with the EEOC.

70. On June 17, 2017 the Arbitrator found Pace attempted to terminate Marshall without just cause, and reinstated her employment. In particular, the Arbitrator found Pace's

underlying reason for the termination, purportedly for failing to report an accident, was not credible and completely unsupported by the evidence.

71.     After returning to her position, Marshall continued to endure discriminatory and retaliatory conduct. For example, when Marshall returned working for Pace, she was assigned to drive a Pulse bus, instead of the normal MCI or El Dorado bus. The Pulse buses are longer and contain an extra door compared to the buses for which she was trained.

72.     She was provided a total of thirty minutes of training on the Pulse bus on a route she had never driven before, as opposed to the months of extensive training she received for the MCI and El Dorado buses.

73.     Not surprisingly, she immediately had accidents Pace deemed avoidable.  The accidents, however, were due not only to the lack of training, but also due to the contradictory training instructions she received after the accidents.

74.     For example, on July 25, 2017, due to lack of training on Pulse buses, Marshall made a right turn and the underneath part of the right side of the bus rubbed against the curb. Murry determined this was an avoidable accident.  After this incident, Marshall typically drove an MCI or El Dorado bus.

75.     Marshall's direct supervisors continued to harass and delay her at work, setting her up for failure. For example, at Murry's discretion, supervisors routinely assigned Marshall a bus that is difficult to drive out of the Pace garage without assistance, or assigned her a bus that is parked far away, knowing Pace disciplines drivers for being a mere second late out of the garage.

76.     Ultimately, on approximately October 6, 2017, Murry notified Marshall that she was suspended pending a disciplinary hearing, purportedly for having her third preventable

accident which occurred. Murry claimed Marshall's bus made contact with another car on October 3, 2017, when making a left turn. Marshall did not feel the bus contact another vehicle.

77.     On October 17, 2017, at a disciplinary meeting with Murry, Caputo, Klafeta and Union President Flynn and a union steward, Pace terminated Marshall's employment (again).

78.     The EEOC issued Marshall a Dismissal and Notice of Rights dated October 5, 2017. The Notice was not received because it was delivered to the wrong address. The EEOC resent the Notice, and Marshall's representative received it on November 27, 2017.

## CLASS ALLEGATIONS

79.     Plaintiffs bring their federal claims as a class action pursuant to Federal Rule of Civil Procedure 23. The Rule 23 Class is defined as follows:

> All current or former non-supervisory African American employees of Pace who worked at the Heritage Garage since January 1, 2011, and who drive/drove or move/moved Pace buses as part of their job duties.

80.     **Numerousity**: The persons in the Rule 23 Class identified above is so numerous that joinder of all members is impracticable. The precise number of such persons is unknown, but easily ascertainable from Pace's employment records and believed to be in excess of 40.

81.     **Commonality**: There are numerous questions of law and fact common to the Rule 23 Class, including whether Defendants' conduct applicable violated anti-discrimination laws.

82.     **Typicality:** The claims of the Representative Plaintiffs are typical of the Rule 23 Class.

83.     **Adequacy:** Representative Plaintiffs will fairly and adequately represent the interests of the Rule 23 Class.

84.     Class certification is appropriate under Rule 23(b)(2) because Plaintiffs seek injunctive relief on behalf of a class of affected individuals (African Americans). Additionally, or

alternatively, certification under Rule 23(b)(3) is appropriate because common questions relating to liability predominate over any questions affecting only individual members. A class action is superior to other methods for the fair and efficient adjudication of the controversy, particularly in the context of discrimination litigation like this, where it is alleged individual class members are affected by Defendants' practices based on the same protected characteristics. Alternatively, certification under Rule 23(c)(4) is appropriate for liability issues.

**COUNT I**

**Race Discrimination (Denial Of Equal Terms, Conditions, Benefits Or Privileges Of Employment) In Violation of CRA of 1866, Section 1981 (All Plaintiffs Against All Defendants In All Capacities)**

85. Plaintiffs replead the allegations contained in all paragraphs of this Complaint and incorporate them by reference as if fully set forth herein.

86. Section 1981 of the CRA of 1866, as amended, prohibits employers from subjecting their employees to discrimination with respect to terms, conditions, benefits or privileges of employment based on race or color.

87. Section 1981 of the CRA of 1866, as amended, also grants all persons within the jurisdiction of the United States the same rights to make and enforce contracts and to the full and equal benefits of the law as is enjoyed by white citizens.

88. Defendants denied Plaintiffs and the Rule 23 Class equal terms, conditions, benefits or privileges of employment because of their race or color.

89. Defendants' actions were willful, intentional and/or done maliciously or with callous disregard or reckless indifference to Plaintiffs' and Rule 23 Class Members' federally protected rights. Exemplary damages are warranted to prevent similar unlawful conduct by Defendants.

90.     Defendants, having knowledge of the above actions, and having power to prevent or aid in preventing the commission of the same, neglected or refused to prevent the unlawful acts.

91.     Plaintiffs and the Rule 23 Class were damaged by Defendants' conduct.

### COUNT II
**Race Discrimination (Termination or Forced Resignation)**
**In Violation Of CRA of 1866, Section 1981**
**(All Plaintiffs Against All Defendants In All Capacities)**

92.     Plaintiffs replead the allegations contained in all paragraphs of this Complaint and incorporate them by reference as if fully set forth herein.

93.     Section 1981 of the CRA of 1866, as amended, prohibits employers from subjecting their employees to discrimination with respect to terms, conditions, benefits or privileges of employment based on race or color.

94.     Section 1981 of the CRA of 1866, as amended, also grants all persons within the jurisdiction of the United States the same rights to make and enforce contracts and to the full and equal benefits of the law as is enjoyed by white citizens.

95.     Defendants terminated Plaintiffs and certain Rule 23 Class members or forced them to resign because of their race or color.

96.     Defendants' actions were willful, intentional and/or done maliciously or with callous disregard or reckless indifference to Plaintiffs' and certain Rule 23 Class members' federally protected rights.  Exemplary damages are warranted to prevent similar unlawful conduct by Defendants.

97.     Defendants, having knowledge of the above actions, and having power to prevent or aid in preventing the commission of the same, neglected or refused to prevent the unlawful acts.

98.     Plaintiffs and the Rule 23 Class were damaged by Defendants' conduct.

<u>**COUNT III**</u>
**Intentional and Unintentional Race Discrimination (Denial Of Equal Terms, Conditions, Benefits Or Privileges Of Employment) In Violation Of Title VII (All Plaintiffs Against Pace Suburban Bus)**

99.     Plaintiffs replead the allegations contained in all paragraphs of this Complaint and incorporate them by reference as if fully set forth herein.

100.     Title VII prohibits employers from denying employees equal employment opportunities with respect to terms, conditions, benefits or privileges or employment based on their race or color. Plaintiffs, on behalf of themselves and the Rule 23 Class, allege both disparate treatment and disparate impact discrimination.

101.     Defendants denied Plaintiffs and the Rule 23 Class equal terms, conditions, benefits or privileges of employment because of their race or color.

102.     Plaintiffs' and the Rule 23 Class' race or color was a motivating factor for Defendants' conduct towards them.

103.     Defendants' actions were willful, intentional and/or done maliciously or with callous disregard or reckless indifference to Plaintiffs' and the Rule 23 Class' federally protected rights.  Exemplary damages are warranted to prevent similar unlawful conduct by Defendants.

104.     Additionally, Defendants used employment practices and/or implemented employment policies that had a disparate impact on African Americans as described herein.

105.     Plaintiffs and the Rule 23 Class were damaged by Defendants' conduct.

**COUNT IV**
**Intentional and Unintentional Race Discrimination**
**(Termination or Forced Resignation) In Violation Of Title VII**
**(All Plaintiffs Against Pace Suburban Bus)**

106.    Plaintiffs replead the allegations contained in all paragraphs of this Complaint and incorporate them by reference as if fully set forth herein.

107.    Title VII prohibits employers from terminating employment or forcing them to resign based on their race or color.

108.    Defendants terminated Plaintiffs and certain Rule 23 Class members or forced them to resign because of their race or color.

109.    Plaintiffs' and certain Rule 23 Class members' race or color was a motivating factor for Defendants' conduct towards them.

110.    Defendants' actions were willful, intentional and/or done maliciously or with callous disregard or reckless indifference to Plaintiffs' and certain Rule 23 Class members' federally protected rights.  Exemplary damages are warranted to prevent similar unlawful conduct by Defendants.

111.    Additionally, Defendants used employment practices and/or implemented employment policies that had a disparate impact on African Americans as described herein.

112.    Plaintiffs and the Rule 23 Class were damaged by Defendants' conduct.

**COUNT V**
**Unlawful Deprivation Of Federally Protected Rights (Equal Protection Clause Of The Fourteenth Amendment And/Or The CRA Of 1866, Sections 1981, 1985, And/Or 1986)**
**(All Plaintiffs Against All Defendants In All Capacities)**

113.    Plaintiffs replead the allegations contained in all paragraphs of this Complaint and incorporate them by reference as if fully set forth herein.

114.     Pace Suburban Bus and/or Ms. Murry each is a "person" as used under Section 1983.

115.     The Equal Protection Clause of the Fourteenth Amendment precludes individuals acting under color of state law from denying individuals equal treatment on the basis of race or color.

116.     Defendants deprived Plaintiffs and the Rule 23 Class of their federally protected rights under the Equal Protection Clause of the Fourteenth Amendment while acting under color of state law.

117.     Defendants deprived Plaintiffs and the Rule 23 Class of their federally protected rights under the CRA of 1866, Sections 1981 and 1985, while acting under color of state law.

118.     Plaintiffs' and the Rule 23 Class' race or color was a motivating factor in Defendants' conduct towards Plaintiffs.

119.     Defendants' actions were willful, intentional and/or done maliciously or with callous disregard or reckless indifference to Plaintiffs' and the Rule 23 Class' federally protected rights.  Exemplary damages are warranted to prevent similar unlawful conduct by Defendants.

120.     Plaintiffs and the Rule 23 Class were damaged by Defendants' conduct.

### COUNT VI
**Intentional and Unintentional Race Discrimination (Denial of Equal Terms, Conditions, Benefits or Privileges Of Employment) In Violation Of The IHRA (All Plaintiffs Against Pace Suburban Bus)**

121.     Plaintiffs replead the allegations contained in all paragraphs of this Complaint and incorporate them by reference as if fully set forth herein.

122.     The IHRA prohibits employers from denying employees equal employment opportunities with respect to terms, conditions, benefits or privileges or employment based on their race or color.

123.    Defendants denied Plaintiffs and the Rule 23 Class equal terms, conditions, benefits or privileges of employment because of their race or color.

124.    Plaintiffs' and the Rule 23 Class' race or color was a motivating factor for Defendants' conduct towards them.

125.    Additionally, Defendants used employment practices and/or implemented employment policies that had a disparate impact on African Americans as described herein.

126.    Plaintiffs and the Rule 23 Class were damaged by Defendants' conduct.

<u>**COUNT VII**</u>
**Intentional and Unintentional Race Discrimination (Termination or Forced Resignation)**
**In Violation Of The IHRA**
**(All Plaintiffs Against Pace Suburban Bus)**

127.    Plaintiffs replead the allegations contained in all paragraphs of this Complaint and incorporate them by reference as if fully set forth herein.

128.    The IHRA prohibits employers from terminating employment or forcing them to resign based on their race or color.

129.    Defendants terminated Plaintiffs and certain Rule 23 Class members or forced them to resign because of their race or color.

130.    Plaintiffs' and the Rule 23 Class' race or color was a motivating factor for Defendants' conduct towards them.

131.    Additionally, Defendants used employment practices and/or implemented employment policies that had a disparate impact on African Americans as described herein.

132.    Plaintiffs and the Rule 23 Class were damaged by Defendants' conduct.

## COUNT VIII
### Race Discrimination In Violation Of The Illinois Civil Rights Act of 2003
### (All Plaintiffs Against Pace Suburban Bus)

133.   Plaintiffs replead the allegations contained in all paragraphs of this Complaint and incorporate them by reference as if fully set forth herein.

134.   Defendant Pace Suburban Bus has discriminated against Plaintiffs and the Rule 23 Class in violation of the Illinois Civil Rights Act, 740 ILCS 23/1 *et seq.*, by denying them benefits of employment and subjecting them to discrimination in employment on the basis of their African American race.

135.   Defendant Pace Suburban Bus utilized criteria or methods of administration that had the effect of subjecting Plaintiffs and the Rule 23 Class to discrimination because of their race.

136.   Plaintiffs were damaged by Defendants' conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Rule 23 Class, prays that this Court:

A.   Certify the case as a class action maintainable under the Federal Rules of Civil Procedure Rule 23(a), (b)(2), and/or (b)(3), or (c)(4) on behalf of the proposed class or an alternative class as appropriate, and designate Nelson and Marshall or others as the representatives of this Class and their counsel of record as class counsel;

B.   Declare and adjudge that Defendants' employment policies, practices, and/or procedures challenged herein are illegal under the Civil Rights Act of 1866, Title VII of the Civil Rights Act of 1964, the Equal Protection Clause of the Fourteenth Amendment and/or the CRA of 1866, the Illinois Human Rights Act, and/or the Illinois Civil Rights Act of 2003;

C.       Issue a permanent injunction barring Defendants and any and all persons acting in concert with them from engaging in any conduct violating the laws herein;

D.       Order Defendants to initiate and implement programs that will remedy the conduct violating the laws herein;

E.       Award nominal, compensatory, statutory, punitive and/or any other type of damages available under applicable law to Plaintiffs and the Rule 23 Class;

F.       Award litigation costs and expenses, including, but not limited to, reasonable attorneys' fees, costs and pre-judgment and post-judgment interest, incurred by or on behalf of Plaintiffs and the Rule 23 Class.

G.       Award any other appropriate equitable relief to Plaintiffs and the Rule 23 Class; and

H.       Award any additional and further relief as this Court may deem just and proper.

<u>**JURY DEMAND**</u>

Plaintiffs demand a trial by jury of all issues raised in this Complaint.

Maurice Nelson and Christi Marshall, on behalf of themselves and all others similarly situated,

By:_____ */s/* J. Bryan Wood_____
    One of Plaintiffs' Attorneys

J. Bryan Wood (No. 6270845)
Ryan O. Estes (No. 6312755)
THE WOOD LAW OFFICE, LLC
303 W. Madison St., Ste. 2650
Chicago, Illinois 60606
Telephone: (312) 554-8600
Facsimile: (312) 577-0749
Email: bryan@jbryanwoodlaw.com
Email: restes@jbryanwoodlaw.com

Quinton Osborne (No. 6319417)
OSBORNE EMPLOYMENT LAW LLC
799 Roosevelt Road, Suite 3-201
Glen Ellyn, IL 60137
Telephone: (331) 702-1538
Facsimile: (331) 465-0450
Email: Quinton@OsborneEmploymentLaw.com

November 12, 2018