## TUNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| Maurice Nelson and Christi Marshall, | |
| Plaintiffs, | No. 17-cv-7697 |
| v. | Judge John Z. Lee |
| Pace Suburban Bus and Margaret Murry, | |
| Defendants. | |

## DEFENDANTS' STATEMENT OF FACTS

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1(a)-(b), Defendants Pace Suburban and Margaret Murry ("Defendants"), by and through their undersigned counsel, submit this Statement of Facts in support of their Motion for Summary Judgment.

**A.      Pace's Heritage Division Provides Safe and Efficient Public Transportation Options to Chicago's Southwest Suburbs.**

1.      Pace provides public transit covering 3,446 square miles of Chicago's suburbs, serving residents of 284 municipalities in Cook, Will, DuPage, Kane, Lake, and McHenry Counties. (Murry Dec., Ex. 1, ¶ 2.)  Pace has several geographical divisions. (*Id*., ¶ 3.) The Heritage Division covers the southwest suburbs, including Joliet. (*Id*.) Vehicles servicing the Heritage Division are stored and maintained at a 55,000 square foot facility in Joliet ("Heritage Garage"). (*Id*., ¶ 4.)

2.      Murry has been the Division Manager of Heritage Garage since 2001. (*Id*., ¶ 5.) She directly supervises the Superintendent of Transportation, who at all relevant times was David Dines, an African-American, and the Safety and Training Manager, who at all relevant times was Anthony Caputo. (*Id*. ¶ 7.) Murry is supervised by Mark Klafeta, the Regional Manager at all relevant times. (*Id*. ¶ 12.)

3.      Superintendent of Transportation Dines supervises four Dispatch Supervisors (at all relevant times: Kathleen Clemmer, Maurice Shelton, Roberta Fews, and Norvell Clark, Delois Jenkins, and Sheldon Gray each African-American). (*Id*., ¶¶ 7, 8.). The Dispatch Supervisors directly oversee all bus operators responsible for driving Pace buses and other vehicles on fixed routes in the Heritage Division ("Operators"). (*Id*., ¶¶ 8, 9.)

4.      Employees in the Maintenance Department of Heritage Garage include service workers, helpers, a foreman (who is a supervisor), and the Superintendent of Maintenance, who has near-total authority over Maintenance Department personnel.  Murry's supervision over the Superintendent of Maintenance is limited to reviewing and approving or disapproving his disciplinary recommendations. (Murry Dec., Ex. 1, ¶ 11.)

**B.      Pace's Policies, Procedures, and Rules for Bus Operators**

5.      Pace has an Absenteeism Policy (Ex. 2), Pace Miss Out Policy (Ex. 3), and (Pace Street Miss Out Policy (Ex. 4), each of which concern attendance.  Dispatch Supervisors are primarily responsible for initially monitoring compliance with the Absenteeism and Miss Out Policies. (Murry Dec., Ex. 1, ¶¶ 23, 27, 30, 31, 34.) When an Operator appears to have violated one of those policies, the Dispatch Supervisor is responsible for reporting the infraction to Murry and covering the late or absent Operator's route with a another Operator. (*Id*., ¶¶ 23, 33.)

6.      After an absence is reported, Regional Manager Klafeta investigates its circumstances and may ask the Operator for more information. (*Id*., ¶¶ 24, 25, 37.) Klafeta has authority to excuse the infraction for a number of reasons, whereas Murry's authority to excuse an absence or Miss Out is limited to absences occasioned by an Operator's child's school-related activity. (*Id*., ¶ 24.)  Under the Miss Out Policy, Operators who incur two Miss Outs during a rolling 12-month period are subject to a suspension. (Miss Out Policy, Ex. 3.)

7.     The Standard Operating Procedures define how Operators must safely operate Pace vehicles, including: turns; merging; changing lanes; passing; expressway operations; backing up; and railroad crossings. (Murry Dec., Ex. 1, ¶ 45; Pace Standard Operating Procedures, Ex. 5.) Safety and Training Manager Caputo helps enforce Pace's safety standards by conducting accident investigations. (Murry Dec., Ex. 1, ¶ 53.) Superintendent of Transportation Dines also investigates some accidents. (*Id*., ¶ 53.)

8.     Operators must report all accidents and incidents to Pace. (*Id*., ¶ 64.) Operators who fail to report an accident or incident are "subject to immediate dismissal, unless … shown conclusively that … the employee did not [know] or could not have [known] … of the occurrence." (*Id*., ¶ 65; 2011-2017 CBA, Ex. 6; 2017-2022 CBA, Ex. 7.)

9.     Under the collective bargaining agreement between Pace Heritage Division and the Union ("Labor Contract"), there is a difference between failing to report an accident or incident and failing to report it promptly, in that the former is more generally more reprehensible and warrants a higher level of discipline. (Murry Dec., Ex. 1, ¶ 65.)  Klafeta testified during his deposition he does not believe he has ever terminated a Pace employee for failure to immediately report, *i.e.*, a delay in reporting, an accident or incident. (Klafeta Dep., Ex. 8, 106:23-107:4.)

10.     If Pace learns of an accident or incident from a source other than the involved Operator, then Murry, Regional Manager Klafeta, or Dines may interview the Operator and/or review video of the incident. (Murry Dec., Ex. 1 ¶ 66; Klafeta Dep., Ex. 8, 85:13-19.) Based on this evidence and all the circumstances, one or more of them will form a judgment about whether the Operator did not know or could not have known of the occurrence. (*Id*.)

11.     Six decision-making bodies or individuals may participate in the final grading of an accident. (Murry Dec., Ex. 1, ¶¶ 59-61.) Grading an accident requires the decision-maker to

analyze the individual facts and circumstances of a particular accident under Pace's Standard Operating Procedures, considering all available evidence (video, photographs, testimonial). (Murry Dec., Ex. 1, ¶¶ 56, 57, 61; Murry Dep., Ex. 9, 157:20-158:1.)

12.     Operators are subject to conduct standards including ethical standards, responsibility for property, maintaining a valid driver's license, drug/alcohol use, using best judgment, and accident reporting and assistance. (Murry Dec., Ex. 1, ¶ 46; Pace General Rule Book Governing Bargained-For Employees, Ex. 10.)

13.     Pace learns of incidents or other violations of the conduct standards from sources including citizen complaints, monitors (who observe and report on Operator performance), self-reports, Supervisor Violation Reports, and other Operators' reports. (Murry Dec., Ex. 1, ¶¶ 50-52.) Depending on the nature of the infraction, violation of the Standard Operating Procedures or conduct standards may result in discipline. (*Id.*, ¶ 47; Pace General Rule Book Governing Bargained-For Employees, Ex. 10.)

14.     General Teamsters Local 179 ("Union") reviews and approves operator policies involving subjects about which Pace is obliged to bargain. (Murry Dec., Ex. 1, ¶ 20.) Discipline issued to non-probationary Operators is subject to the policies and procedures in Labor Contract. (*Id.*, ¶¶ 73-77.) Non-probationary Operators' rights under the Labor Contract include: no Operator shall be disciplined without cause; and discipline may be disputed through a three-step grievance process. (*Id.*, ¶ 73; Pace 2011-2017 CBA, Ex. 6; Pace 2017-2022 CBA, Ex. 7) Steps one and two include meetings with Murry and then Klafeta, respectively, to dispute the discipline. (Murry Dec., Ex. 1 ¶¶ 75, 76.) If the meetings with Murry and Klafeta fail to resolve the grievance, the matter can proceed to step three, binding arbitration. (*Id.*, ¶ 77.)

15.     From 2011 until the time both Plaintiffs were terminated, only one Operator, Plaintiff Marshall, has grieved a termination through a step three arbitration hearing. (*Id*., ¶77.)

16.     As an additional layer of review, Operators may appeal Pace's determination that an accident was preventable to the National Safety Council, a non-profit organization with expertise in road safety investigations. (*Id*., ¶ 80.)  The National Safety Council's decision about whether an accident was preventable is binding on Pace. (*Id*., ¶ 81.)

## C.     Pace is an Equal Opportunity Employer with Zero-Tolerance Anti-Discrimination Policies and Procedures

17.     Pace is an equal opportunity employer. (Excerpt of Pace EEO Program, Ex. 11.) At all relevant times, Pace enforced an Equal Employment Opportunity (EEO) Program whose objectives were to:

> ensure that applicants are equitably selected for employment, and that during employment, employees are treated fairly without regard to race, color, religion, sex, national origin, military status, family status, age or disability, sexual orientation or any other protected characteristic defined under Federal and State laws. The provisions of this plan are implemented by management within Pace's organization.

(*Id*. at 2.)

The EEO Program has a written-complaint filing procedure intended to minimize discrimination in the workplace. (*Id*. at 15-16; Ex. D.) The procedure provides that "Pace strongly disapproves of any act of discrimination and will not tolerate its occurrence." (*Id*. at 15.)

## D.     Plaintiff Maurice Nelson

18.     Pace employed Nelson from October 20, 2014 to approximately October 26, 2016, as a full-time Operator at the Heritage Garage. *See* Answer, DKT. 74, ¶ 7.

19.     On March 7, 2015, Nelson was suspended because he did not have a valid driver's license and returned to work once he submitted proof of a valid license. (Excerpts of M. Nelson Personnel File, Ex. 12., pp. 3-4)

20.     On May 19, 2015, Nelson was suspended for one day because he incurred two full Miss Outs during a rolling 12-month period. (*Id*. at pp. 5-6.) Sheldon Gray was the Dispatch Supervisor on duty who discussed the infraction with Nelson and helped complete the incident report. (*Id*.)

21.     On July 11, 2016, Nelson was suspended for one day because on July 5, 2016, he failed to report that he had traveled approximately 25 miles in the wrong direction, attempted a U-turn at an intersection, and backed his bus into traffic. (*Id*. at pp. 7-12.)

22.     On September 13, 2016, Nelson was suspended for one day because he had two full Miss Outs in a rolling 12-month period. (*Id*. at pp. 13-15.) Kathleen Clemmer was the Dispatch Supervisor on duty who helped complete the incident report. (*Id*.)

23.     On October 20, 2016, Safety and Training Manager Caputo observed the front bumper of the Pace bus Nelson had operated touching the rear bumper of another Pace bus while parked at Heritage Garage. (Caputo Dep., Ex. 13, 120:10-25; Excerpts of M. Nelson Personal File, Ex. 12., pp. 20-21)

24.     Caputo and Dispatch Supervisor Shelton photographed Nelson's bus and saw damage on its front. (*Id*.) Superintendent of Transportation Dines also investigated the accident and observed the buses touching. (Dines Dep., Ex. 14, 150:2-21.) Based on the investigation, including meeting with Nelson, the accident was graded preventable. (Excerpts of M. Nelson Personal File, Ex. 12., pp. 3-4, 16-19)

25.     Nelson did not report the accident to Pace. (Klafeta Dep., Ex. 8, 108:12-13.)

26.     Regional Manager Klafeta reviewed video of the accident, showing Nelson's bus making contact with the parked bus in front of him and Nelson exiting his bus to confirm it touched the adjacent bus. (*Id*., 86:9-87:2, 97:24-99:6.) Klafeta decided to terminate Nelson because Kafeta

believed that Nelson could not credibly deny knowledge of the accident. (*Id.*; *see also id.*, 108:7-19.)

27.     Nelson filed a grievance, but Pace denied it and the Union declined to pursue the grievance through arbitration. (*Id.*, 142:20-143:1.)

28.     During his deposition, Nelson testified he was aware of Pace's anti-discrimination policy, but did not make any complaints of discrimination under that policy during his employment with Pace. (Nelson's Dep., Ex. 15, 40:10-12, 42:3-7.)

**E.     Plaintiff Christi Marshall**

29.     Marshall was employed by Pace from October 19, 2015 to approximately October 17, 2017, as a full-time bus operator at the Heritage Garage. *See* Answer, DKT 74, ¶ 8.

30.     On September 1, 2016, Marshall asked Safety and Training Manager Caputo to review video of her having difficulty merging during her shift earlier that day. (*Id.*, ¶ 63.) When Caputo watched the video, he concluded it showed Marshall was involved in an accident that she failed to report. (Caputo Dep., Ex. 13, 110:6-112:20; 114:7-117:14.)

31.     After meeting with Marshall, Caputo decided Marshall's explanation of why she could not have known of the accident lacked credibility. (Excerpts of M. Marshall Personnel File, Ex. 16, p. 7, 10-11). Murry and Regional Manager Klafeta conferred and agreed, resulting in Marshall's termination on or about September 14, 2016. (Murry Dep., Ex. 9, 148:23-25, 151:11-13, 152:23-153:1.)

32.     Marshall was reinstated with back pay on June 17, 2017, following the Union's grievance arbitration. *See* Answer, DKT 74, ¶¶ 70; (Excerpts of M. Marshall Personnel File, Ex. 16, p. 22.)

33.     On July 5, 2017, Marshall received a written warning for a preventable accident that occurred on June 30, 2017—three days after her reinstatement. (Excerpts of M. Marshall Personnel File Ex. 16, p. 23) Superintendent of Transportation Dines was involved in the investigation and Dispatch Supervisor Delois Jenkins wrote the service interruption report. (*Id.* at pp. 24-30.)

34.     On July 27, 2017, Marshall was suspended pending an investigation into a July 25, 2017 collision of a bus Marshall was operating. (Excerpts of M. Marshall Personnel File Ex. 16., p. 31) On July 28, 2017, Marshall was suspended for one day because she failed to report the collision on July 25, 2017, which was graded preventable. (*Id.* at 32.)

35.     Superintendent of Transportation Dines was involved in the investigation of the July 25, 2017, collision and Dispatch Supervisor Jenkins wrote the service interruption report associated with the collision. (*Id.* at pp. 33-35.)

36.     On October 3, 2017, Marshall was involved in a preventable collision, which was her third preventable accident in a rolling 12-month period. (*Id.* at p. 36.)

37.     Following meetings with Marshall, she was terminated from employment on October 17, 2017 because she had three preventable accidents in a rolling 12-month period. (Excerpts of M. Marshall Personnel File, Ex. 16, pp. 24-25, 45, 37-44 ; *See* Answer, DKT 74, ¶ 77) Marshall grieved her second termination; this time, unsuccessfully. (Excerpts of M. Marshall Personnel File, Ex. 16., p. 46)

38.     Either Murry or Regional Manager Klafeta recommended to Marshall that she ask the National Safety Council to review the accident; she did not do so.  (Murry Dep., Ex. 9, 171:4-13.)

39.     Marshall understood Pace's procedure for making complaints of discrimination and understood that discrimination was "not tolerated" at Pace." (*Id*. at 69:17-73:5; Marshall Dep., Ex17, 70:5-71:15; Excerpt of Pace EEO Program, Ex. 11.) Marshall did not make any complaints of discrimination during her employment with Pace. (*Id*.)

**F.     Comparable Employees: Jacob Mack and John Porro**

40.     Pace hired employee Jacob Mack (Caucasian) as a part-time Operator at the Heritage Garage on March 9, 2015, and he was promoted to full-time operator on July 26, 2015. (Excerpts of J. Mack Personnel File, Ex. 18.)

41.     On January 3, 2017, Mack had his first preventable accident, which resulted in a written warning and retraining. (*Id*.) On July 27, 2017, Mack had his second preventable accident and second in a rolling 12-month period, resulting in a one-day suspension. (*Id*.) Mack had no other preventable accidents at all relevant times.

42.     John Porro (Caucasian) was employed by Pace in the building maintenance department at Heritage Garage from on or about December 22, 2002, until his termination on November 2, 2011, during which time he periodically operated Pace buses, similar to Operators. (Excerpt of J. Porro Personnel File, Ex. 19.)

43.     Murry approved Porro's termination, as recommended by the Superintendent of Maintenance. (*Id*.)  On November 2, 2011, Pace terminated Porro because he had three preventable accidents in a rolling 12-month period. (*Id*.)

**G.     Allegedly Comparable Employees**

44.     Pace hired Raymond Ulrich (Caucasian) as an Operator on November 8, 2010. (Excerpt of R. Ulrich Personnel File, Ex. 20; Plaintiffs' 4/25/2018 R. 26 Disclosures, ¶ 1C, Ex. 21.)

45.     On March 28, 2016, Ulrich had a reportable incident concerning a passenger. (*Id.*) Ulrich reported the incident to dispatch immediately, but did not prepare a written report the same day. (Klafeta Dep., Ex. 8, 95:1-96:8.)

46.     Pace hired Romeo Zamudio (Hispanic) as an Operator on March 3, 1993. (Excerpt of R. Zamudio Personnel File, Ex. 22; Klafeta's Dep. Ex._103:2-3.)

47.     On or around August 28, 2012, Zamudio had an incident where a passenger fell while Zamudio was operating a bus. (*Id.*). Zamudio resumed his route after the incident, and reported the incident immediately after resuming his route. (*Id.*) However, he received a written warning and retraining because he did not report the incident before resuming his route. (*Id.*)

48.     Pace hired Michael Rooney (Caucasian) as an Operator on September 27, 2010 . (Excerpt of M. Rooney Personnel File, Ex. 23; Plaintiffs' 4/25/2018 R. 26 Disclosures, ¶ 1C, Ex. 21.)

49.     On August 3, 2012, Rooney had a preventable accident. (*Id.*; Murry Aug. 6, 2012 Email Re Rooney, Ex. 24) He resumed his route and reported the accident using his cell phone while in transit. (*Id.*) He received a write-up for failing to report the accident immediately and was suspended for talking on his cell phone while operating the bus. (*Id.*; Excerpt of M. Rooney Personnel File, Ex. 23.)

50.     Pace hired Richard Delgado on November 13, 1995, as an Operator. (Excerpt of R. Delgado Personnel File, Ex. 25.)

51.     On August 9, 2018, Delgado (Hispanic) had a preventable accident when backing up a relief vehicle in a curb lane. (*Id.*; Dines Dep., Ex. 14, 192:3-14, 194:1-195:1.) Unlike buses, Pace drivers need not contact dispatch before reversing a relief vehicle. (*Id.*) The vehicle accidentally made contact with a pedestrian while it was moving in reverse. (*Id.*)

52.     The accident was Delgado's second preventable accident in a 12-month period, and resulted in an eight-day suspension and retraining. (*Id.*) Pace's policies and practices did not require or suggest an employee should be terminated in such circumstances. (*Id.*)

53.     Pace hired Michael Neilson (Caucasian) as a Service Worker in its Maintenance Department on October 19, 2015, but he also operated Pace buses like Operators. (Excerpt of M. Neilson Personnel File, Ex. 26; Plaintiffs' 4/25/2018 R. 26 Disclosures, ¶ 1C, Ex. 21)

54.     Neilson had a non-preventable accident during training, where the bus he was operating scuffed against a construction sign, and caused no damage to the bus or the stop sign. (Caputo Dep., Ex. 13, 95:17-97:16.)

55.     Neilson had two preventable accidents at all relevant times; he received a write-up for the first and was suspended for the second. (Excerpt of M. Neilson Personnel File, Ex. 26.)

56.     Certain former Pace employees filed a federal lawsuit against Pace and Murry on January 7, 2009, styled *Johnson et al. v. PACE Suburban Bus et al.* ("*Johnson*"). (*Johnson* Answer, DKT 14, Case 09 CV 00080 (N.D. Ill.) Ex. 27.)

57.     None of the 170 paragraphs in the *Johnson* complaint allege any discriminatory application of the same policies that Nelson and Marshall were terminated for violating. (*Id.*)

58.     In the *Johnson* complaint, Plaintiff Johnson alleged she resigned before she was scheduled to meet with Murry's supervisor, Peter Kommor, because she feared she would be terminated at that meeting for accumulating what she believed were too many miss outs. (*Id.* at ¶¶ 43-46.)

59.     In the *Johnson* complaint, Plaintiff Scates alleged she resigned in the belief that she would be terminated for accumulating too many Miss Outs. (*Id.* at ¶¶ 65-69.)

60.     In the *Johnson* complaint, Plaintiff Ento alleged she resigned because she was denied a meeting with Murry and a union representative prior to continuing to work a route she believed was not timely assigned to her. (*Id*. at ¶¶ 92-93.)

61.     The *Johnson* complaint was not verified, no discovery was conducted in that case and no plaintiff or other witness submitted an affidavit in an effort to substantiate the unsworn allegations.

62.     The *Johnson* case was dismissed with prejudice as a result of a settlement in which Pace admitted no liability or wrongdoing. (*See Johnson* Docket Report, Ex. 28.)

63.     In 2015, Pace employee Fonn Moore made an internal complaint of discrimination after she was terminated for having three preventable accidents in a 12-month time period. (Gordon Deposition Exhibit 4, Ex. 29 at PACE002808-002810.)

64.     In her internal complaint, Ms. Moore alleged that Murry fired her after she turned in FMLA paperwork related to her need for leave to care for her daughter, retaliated against her for declining to learn how to drive a downtown route, and refused to provide her training. (Gordon Deposition Exhibit 4,. Ex. 29 at PACE002815.)

65.     In her internal complaint, Ms. Moore alleged that: (a) Mr. Caputo yelled at her in front of her coworkers while she was eating lunch and wrote her up for refusing to look at pictures of a vehicle accident (Gordon Deposition Exhibit 4, Ex. 24 at PACE002816); and (b) Mr. Klafeta accused her of lying, refused to listen to her and treated her rudely during meetings. (Gordon Deposition Exhibit 4, Ex. 24 at PACE002817.)

66.     Pace terminated an Operator for incurring three and one-half Miss Outs in a rolling 12-month period; however, the Operator and Pace entered into a last chance agreement whereby the Operator was reinstated and agreed that if she incurred another Miss Out within the 12-month

period, she would be terminated without recourse to the grievance arbitration process. (Confidential Personnel Records, Ex. 30, PACE004378-82.) Within four weeks thereafter, the Operator incurred another Miss Out and voluntarily resigned. (*Id.*, PACE004392.)

67.     A probationary Operator was not terminated after having an accident during training and failing to complete an accident report. (Murry Dep., Ex. 9, 92:16-96:8.) Safety and Training Manager Caputo was on the bus when the accident occurred and determined a formal report was not needed; Caputo's decision was not reviewed by Murry or anyone else at Pace. (*Id.*)

68.     An Operator grieved the grading of an accident as preventable, resulting in the Union and Pace agreeing to send the investigation to Department Manager of Safety/Training Pappas, who changed the grading to not preventable. (Dines Dep., Ex. 14, 185:10-186:24.)

**H.     Admissible Opinions of Plaintiffs' Experts**

69.     Plaintiffs expert witness, Ann B. Plunkett, has offered two admissible opinions in this matter, as follows:

> (i)     "The Defendant, Pace, failed to meet the threshold standards required by the FTA as detailed in the Pace Suburban Bus EEO Compliance Review Final Report dated April 2016."
>
> (ii)    "Defendant Pace failed to make any efforts to identify, correct or remediate possible race discrimination after multiple allegations of race discrimination in disciplinary and termination decisions were made against Defendant Murry, in accordance with EEOC Enforcement Guidance."

(Plunkett Expert Report, Ex. 31.) DKT. 168 at 7.

70.     Plaintiffs expert witness, Destiny Peery, has offered opinions in this matter, which are admissible to the extent that she can: "testify generally on the impact of bias and stereotyping on workplace disciplinary decisions, the types of policies that can foster bias and stereotyping, and whether such policies were in effect at Pace." DKT. 168 at 6 (Order on Defendants' Motion to Exclude Plaintiffs' Experts).

Dated:  April 29, 2022

Respectfully submitted,

**PACE BUS SERVICES** and **MARGARET MURRY**

By:  ___/s/ *David L. Weinstein*_____
One of Defendants' Attorneys

David L. Weinstein (ARDC No. 3125588)
dweinstein@taftlaw.com
Rachel L. Schaller (ARDC No. 6306921)
rschaller@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, Suite 2800
Chicago, Illinois 60601
(312) 527-4000

73201180v3

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Maurice Nelson and Christi Marshall, | |
| Plaintiffs, | No. 17-cv-7697 |
| v. | Judge John Z. Lee |
| Pace Suburban Bus and Margaret Murry, | |
| Defendants. | |

**DEFENDANTS' STATEMENT OF FACTS EXHBIT LIST**

Exhibit 1      Margaret Murry Declaration

Exhibit 2      Pace Absenteeism Policy PACE000800-000801

Exhibit 3      Miss Out Policy PACE000802

Exhibit 4      Street Miss Out Policy PACE000803

Exhibit 5      Standard Operating Procedures PACE001510-001678

Exhibit 6      2011-2017 CBA PACE003074-003100

Exhibit 7      2017-2022 CBA PACE 000942-000970

Exhibit 8      Mark Klafeta Deposition

Exhibit 9      Margaret Murry Deposition

Exhibit 10      General Rule Book Governing Bargained-For Employees PACE000805-000815

Exhibit 11      Excerpts from EEO Program

Exhibit 12      Maurice Nelson Personnel File

Exhibit 13      Anthony Caputo Deposition

Exhibit 14      David Dines Deposition

Exhibit 15      Maurice Nelson Deposition

Exhibit 16      Christi Marshall Personnel File

Exhibit 17      Christi Marshall Deposition

| | |
|---|---|
| Exhibit 18 | Excerpt of Jacob Mack Personnel File |
| Exhibit 19 | Excerpt of John Porro Personnel File |
| Exhibit 20 | Excerpt of Raymond Ulrich Personnel File |
| Exhibit 21 | Plaintiffs' 4/25/2018 R. 26 Disclosures |
| Exhibit 22 | Excerpt of Romeo Zamudio Personnel File |
| Exhibit 23 | Excerpt of Michael Rooney Personnel File |
| Exhibit 24 | Aug. 6, 2012 Email Re Rooney PACE000109525 |
| Exhibit 25 | Excerpt of Richard Delgado Personnel File |
| Exhibit 26 | Excerpt of Michael Neilson Personnel |
| Exhibit 27 | Johnson et al. v. PACE Suburban Bus et al Answer |
| Exhibit 28 | Johnson et al. v. PACE Suburban Bus et al Answer  Docket Report |
| Exhibit 29 | Collette Thomas Gordon Deposition Exhibit 4 |
| Exhibit 30 | Confidential Personnel Records PACE004378-004382, PACE009392 |
| Exhibit 31 | Plunkett Expert Report |
| Exhibit 32 | Plaintiffs' Summary of Voluminous Personnel Records and Human Resources Data [DKT 109-3] |