**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Maurice Nelson and Christi Marshall, | |
| Plaintiffs, | No. 17-cv-7697 |
| v. | Judge John Z. Lee |
| Pace Suburban Bus and Margaret Murry, | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

David L. Weinstein (ARDC No. 3125588)
dweinstein@taftlaw.com
Rachel L. Schaller (ARDC No. 6306921)
rschaller@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive
Suite 2800
Chicago, Illinois 60601
(312) 527-4000

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ i

I.    Undisputed Material Facts ......................................................................................... 1

      A.    Pace's Heritage Division Provides Safe and Efficient Public
            Transportation Options. ................................................................................ 1

      B.    Pace's Policies, Procedures, and Rules for Bus Operators. .................................. 1

      C.    Pace is an Equal Opportunity Employer with Zero-Tolerance Anti-
            Discrimination Policies and Procedures. ................................................................ 3

      D.    Plaintiff Maurice Nelson. .............................................................................. 3

      E.    Plaintiff Christi Marshall. ............................................................................. 4

II.   STANDARD .......................................................................................................... 5

III.  ARGUMENT ......................................................................................................... 5

      A.    Summary Judgment Should be entered for Defendants on Plaintiffs'
            Disparate Impact Claims under Title VII, § 1981, and the Illinois
            Civil Rights Act. ........................................................................................... 5

            1.    Plaintiffs' raw numerical comparisons fail to raise a triable
                  issue of disproportionate impact on African-American
                  Operators. ................................................................................ 5

                  i.    Plaintiffs fail to identify a specific employment
                        policy or practice giving rise to a disparate impact on
                        African-American Operators. ....................................................... 6

                  ii.   Plaintiffs fail to show a causal connection between
                        any specific employment practice and an alleged
                        disparate impact. ........................................................................ 7

            2.    Defendants amply demonstrate that the discipline issued to
                  each Plaintiff was job related and consistent with business
                  necessity. ............................................................................... 10

                  i.    The business necessity standard applies to
                        disciplinary policies. ................................................................ 10

                  ii.   Business necessity supports Pace's disciplinary
                        policies that Plaintiffs violated. ................................................. 11

            3.    Plaintiffs fail to suggest a "less discriminatory" method to
                  administer discipline at Heritage Garage or provide
                  admissible evidence of such method. ........................................... 13

      B.    Summary Judgment Should be Entered for Defendants on Plaintiffs'
            Disparate Treatment Claims. ....................................................................... 14

        1.     Plaintiffs cannot demonstrate a genuine issue of material fact through the McDonnell Douglas framework. ............................................ 14

        2.     Plaintiffs cannot otherwise demonstrate a genuine issue of material fact under the Ortiz Standard. ..................................... 17

            i.     Plaintiffs present no evidence of better treatment of people similarly situated but for the protected characteristic. ................................................................ 17

            ii.    There are no ambiguous or suggestive comments or conduct that any decision-maker engaged in racially-motivated behavior. ....................................................... 18

            iii.   Plaintiffs provide no evidence that Defendants' justifications for their discipline were dishonest or pretextual. .................................................................... 19

        3.     Plaintiffs present no evidence from which a jury could find a pattern or practice of discrimination. ....................................... 20

   C.     Plaintiffs' Civil Conspiracy Claims Cannot Survive Summary Judgment. ....................................................................................... 24

   D.    Counts VI and VII Must Be Dismissed For Failure to Exhaust Administrative Remedies. .................................................................. 24

IV.    CONCLUSION ....................................................................................... 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aberman v. Bd. of Educ. of City of Chicago*,
    242 F. Supp. 3d 672 (N.D. Ill. 2017) ..........................................................................6

*Ahuja v. Danzig*,
    14 F. App'x 653 (7th Cir. 2001).............................................................................21

*Alexander v. City of South Bend*,
    433 F.3d 550 (7th Cir. 2006) ................................................................................24

*Anderson v. Nat'l R.R. Passenger Corp.*,
    No. 03 C 7589, 2006 WL 931699 (N.D. Ill. Apr. 6, 2006)....................................18

*Appelbaum v. Milwaukee Metro. Sewerage Dist.*,
    340 F.3d 573 (7th Cir. 2003) ................................................................................12

*Baranowska v. Intertek Testing Servs. NA, Inc.*,
    No. 19 C 6844, 2020 WL 1701860 (N.D. Ill. Apr. 8, 2020)...................................25

*Barnes v. Bd. of Trustees of Univ. of Illinois*,
    946 F.3d 384, 389 (7th Cir. 2020) ........................................................................14

*Bell v. E.P.A.*,
    232 F.3d 546 (7th Cir.2000) .................................................................................18

*Cary v. Ne. Illinois Reg'l Commuter R.R. Corp.*,
    No. 19 C 03014, 2020 WL 1330654 (N.D. Ill. Mar. 22, 2020) ................................5

*Chicago Tchrs. Union, Loc. 1 v. Bd. of Educ. of City of Chicago*,
    419 F. Supp. 3d 1038 (N.D. Ill. 2020), *aff'd sub nom. Chicago Tchrs. Union v.*
    *Bd. of Educ. of the City of Chicago*, 14 F.4th 650 (7th Cir. 2021) ...................10, 13

*Chisholm v. U.S. Postal Serv.*,
    665 F.2d 482 (4th Cir. 1981) ................................................................................23

*Coates v. Johnson & Johnson*,
    756 F.2d 524 (7th Cir. 1985) ................................................................................20

*Coates v. Johnson & Johnson*,
    No. 78 C 1342, 1982 WL 285 (N.D. Ill. Apr. 9, 1982)....................................11, 12

*Combs v. Grand Victoria Casino & Resort*,
    No. 1:08CV00414RLYJMS, 2008 WL 4452460 (S.D. Ind. Sept. 30, 2008) ............6

*Curtis v. City of Chicago*,
No. 16 C 8042, 2019 WL 3776154 (N.D. Ill. Aug. 12, 2019) ..................................................19

*David v. Donahoe*,
No. 11 C 3720, 2013 WL 676243 (N.D. Ill. Feb. 25, 2013) ..................................................15

*Felder-Ward v. Flexible Staffing Servs. Inc.*,
No. 14 C 9246, 2018 WL 1235013 (N.D. Ill. Mar. 9, 2018) ..................................................17

*Fields v. Bd. of Educ. of City of Chicago*,
928 F.3d 622 (7th Cir. 2019) ..................................................14

*Finley v. Fla. Par. Juv. Det. Ctr.*,
No. CIV.A. 12-726, 2013 WL 1344576 (E.D. La. Apr. 3, 2013),
*aff'd*, 574 F. App'x 402 (5th Cir. 2014) ..................................................11

*Green v. Benden*,
281 F.3d 661 (7th Cir. 2002) ..................................................24

*Hamer v. Neighborhood Hous. Servs. of Chicago*,
No. 12 C 10150, 2015 WL 5439362, at *11 (N.D. Ill. Sept. 10, 2015,
*aff'd*, 897 F.3d 735 (7th Cir. 2018) ..................................................8

*Hankins v. Best Buy Co.*,
No. 10 CV 4508, 2011 WL 6016233 (N.D. Ill. Dec. 2, 2011) ..................................................25

*Igasaki v. Ill. Dept. of Fin. & Pro. Regul.*,
988 F.3d 948 (7th Cir. 2021) ..................................................5

*Int'l Brotherhood of Teamsters v. United States*,
431 U.S. 324 (1977) ..................................................23

*Johnson v. Chicago Transit Auth.*,
No. 14 C 9432, 2017 WL 1105446 (N.D. Ill. Mar. 24, 2017),
*aff'd*, 699 F. App'x 558 (7th Cir. 2017) ..................................................15

*Joll v. Valparaiso Cmty. Schs.*,
953 F.3d 923 (7th Cir. 2020) ..................................................17

*Leach v. Brennan*,
No. 15 C 11392, 2018 WL 4590299 (N.D. Ill. Sept. 25, 2018) ..................................................15

*Martin v. Dept. of Corrections*,
2005 WL 906515 (S.D. Ind. 2005) ..................................................12

*Martin v. F.E. Moran, Inc.*,
2017 WL 1316255 (N.D. Ill. Apr. 10, 2017) ..................................................19

*Meachem v. Knolls Atomic Power Lab*,
   554 U.S. 84 (2008) .................................................................................................6

*Mozee v. Am. Com. Marine Serv. Co.*,
   940 F.2d 1036 (7th Cir. 1991) ...............................................................................7

*Myvett v. Kraft Heinz Foods Co., LLC*,
   No. 17 C 8711, 2020 WL 1248342 (N.D. Ill. Mar. 16, 2020) ................................17

*Nelson v. Pace Suburban Bus*,
   No. 17 C 7697, 2020 WL 6565241 (N.D. Ill. Nov. 9, 2020)..................................20

*Ortiz v. Werner Enterprises*,
   834 F.3d 760 (7th Cir. 2016) ................................................................................17

*Pettengell v. Scott*,
   369 F. Supp. 3d 882 (N.D. Ill. 2019) ....................................................................14

*Phillips v. Cohen*,
   400 F.3d 388 (6th Cir. 2005) ..................................................................................9

*Photos v. Twp. High Sch. Dist. No. 211*,
   639 F. Supp. 1050 (N.D. Ill. 1986) .......................................................................24

*Puffer v. Allstate Ins. Co.*,
   675 F.3d 709 (7th Cir. 2012) .....................................................................5, 10, 20

*Rauen v. U.S. Tobacco Mfg. Ltd. P'ship*,
   319 F.3d 891 (7th Cir. 2003) ..................................................................................5

*Reives v. Ill. State Police*,
   29 F.4th 887 (7th Cir. 2022) .................................................................................14

*Smith v. City of Jackson*,
   544 U.S. 228 (2005).................................................................................................5

*Smizer v. Cmty. Mennonite Early Learning Ctr.*,
   No. 10 C 4304, 2013 WL 1154263 (N.D. Ill. Mar. 19, 2013) ................................15

*Stout v. Potter*,
   276 F.3d 1118 (9th Cir. 2002) ................................................................................6

*Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*,
   576 U.S. 519 (2015).....................................................................................7, 10, 13

*Tillman v. Burge*,
   813 F. Supp. 2d 946 (N.D. Ill. 2011) ....................................................................24

iii

*Tyburski v. City of Chicago*,
964 F.3d 590, 599 (7th Cir. 2020) ................................................................................17, 19

*Tyburski v. City of Chicago*,
No. 16 C 09228, 2018 WL 3970150, at *8 (N.D. Ill. Aug. 20, 2018) ....................................19

*Van v. Ford Motor Co.*,
332 F.R.D. 249 (N.D. Ill. 2019)............................................................................................20

*Vitug v. Multistate Tax Comm'n*,
88 F.3d 506 (7th Cir. 1996) ...................................................................................................5

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)..............................................................................................................20

*Welch v. Eli Lilly & Co.*,
585 F. App'x 911 (7th Cir. 2014)............................................................................................6

*Williams v. Wells Fargo Bank, N.A.*,
901 F.3d 1036 (8th Cir. 2018) ..............................................................................................11

*Zmigrocki v. Cook County*,
No. 12 C 9697, 2015 WL 500621 (N.D. Ill. Feb. 4, 2015)......................................................9

**Statutes**

42 U.S.C. §§ 1985 and 1986............................................................................................................24

42 U.S.C. § 2000e-2(k)(1)(A)(ii)....................................................................................................13

**Other Authorities**

29 C.F.R. § 1607.4(d) ......................................................................................................................9

Fed.R.Civ.P. 56(a) ...........................................................................................................................5

Defendants Pace Suburban Bus and Margaret Murry, by their undersigned counsel, submit this Memorandum of Law supporting their Motion for Summary Judgment. All Plaintiffs' claims allege race discrimination, on theories of disparate impact or disparate treatment. As demonstrated below, based on the undisputed material facts, all Plaintiffs' claims fail as a matter of law.

## I. UNDISPUTED MATERIAL FACTS

### A. Pace's Heritage Division Provides Safe and Efficient Public Transportation Options.

Pace provides public transit covering 3,446 square miles of Chicago's suburbs, serving residents of 284 municipalities in Cook and the five collar Counties. Pace's Heritage Division covers Joliet and other southwest suburbs. Vehicles servicing the Heritage Division are stored and maintained at a 55,000 square foot facility in Joliet ("Heritage Garage"), where Plaintiffs worked. Defendant Murry has been the Division Manager of Heritage Garage since 2001. She directly supervises the Superintendent of Transportation (at all relevant times, David Dines, African-American) and the Safety and Training Manager (at all relevant times, Anthony Caputo, Caucasian). Murry is supervised by Mark Klafeta, the Regional Manager at all relevant times. Dines supervises four Dispatch Supervisors, who at all relevant times were African-American. The Dispatch Supervisors directly oversee all bus operators at Heritage Garage ("Operators"). (Defs' R. 56.1 Statement of Facts ("SOF"), ¶¶ 1-3.)

### B. Pace's Policies, Procedures, and Rules for Bus Operators.

Pace has an Absenteeism Policy, Miss Out Policy, and Street Miss Out Policy, each concerning attendance. Dispatch Supervisors are primarily responsible for initially monitoring compliance with the Absenteeism and Miss Out Policies. When an Operator apparently violates those policies, the Dispatch Supervisor is responsible for reporting the infraction to Murry. Under the Miss Out Policy, Operators who incur two Miss Outs during a rolling 12-month period are

subject to a suspension. Additionally, Pace's Standard Operating Procedures define how Operators must safely operate Pace vehicles, including: turns, merging, changing lanes, passing, expressway operations, and backing up. Caputo helps enforce Pace's safety standards by conducting accident investigations. Dines also investigates some accidents. (Defs' SOF, ¶¶ 5, 7.)

Operators must report all accidents and incidents to Pace. Operators who fail to report an accident or incident are "subject to immediate dismissal, unless … shown conclusively that … the employee did not [know] or could not have [known] … of the occurrence." Under the collective bargaining agreement between Pace Heritage Division and General Teamsters Local 179 ("Union"), there is a difference between failing to report an accident or incident and failing to report it promptly; the former warrants a higher level of discipline. (Defs' SOF, ¶¶ 8-9.)

If Pace learns of an accident or incident from a source other than the involved Operator, then Murry, Klafeta, or Dines may interview the Operator and/or review video of the incident. Based on this evidence and all the circumstances, up to a total of six decision-making bodies or individuals will form a judgment about whether the Operator did not know or could not have known of the occurrence and whether an incident or accident was preventable. Operators are also subject to conduct standards, including maintaining a valid driver's license. Depending on the nature of an infraction, violation of the Standard Operating Procedures or conduct standards may result in discipline. (Defs' SOF, ¶¶ 10-13.)

The Union reviews and approves Operator policies involving subjects about which Pace bargains. Discipline issued to non-probationary Operators is subject to procedures in the Labor Contract. Non-probationary Operators' rights under the Labor Contract include: no discipline without cause, and discipline may be disputed through a multi-step grievance process. Initial steps in the grievance process include meetings with Murry and then Klafeta to dispute the discipline. If these meetings do not resolve the grievance, it can proceed to binding arbitration. From 2011

until the time both Plaintiffs were terminated, Plaintiff Marshall is the only Operator who grieved a termination through an arbitration hearing. As an additional layer of review, Operators may appeal Pace's determination that an accident was preventable to the National Safety Council, a non-profit organization with expertise in road safety investigations. The National Safety Council's decision about whether an accident was preventable is binding on Pace. (Defs' SOF, ¶¶ 14-16.)

### C. Pace is an Equal Opportunity Employer with Zero-Tolerance Anti-Discrimination Policies and Procedures.

At all relevant times, Pace, an equal opportunity employer, enforced an Equal Employment Opportunity (EEO) Program whose objectives were to minimize discrimination and promote fair treatment without regard to race or other protected categories. (Defs' SOF, ¶ 17.)

### D. Plaintiff Maurice Nelson.

Pace employed Nelson from October 2014 to approximately October 2016, as a full-time Operator at Heritage Garage. In March 2015, Nelson was suspended because his driver's license expired; he resumed work upon submitting a valid license. In May 2015, Nelson was suspended for one day because he incurred two full Miss Outs during a rolling 12-month period. Dispatch Supervisor Sheldon Gray discussed the infraction with Nelson and helped complete the incident report. In July 2016, Nelson was suspended for one day because he failed to report that he had traveled about 25 miles in the wrong direction, attempted a U-turn at an intersection, and backed his bus into traffic. In September 2016, Nelson was suspended for one day because he had two full Miss Outs in a rolling 12-month period. Dispatch Supervisor Kathleen Clemmer helped complete the incident report. (Defs' SOF, ¶¶ 18-22.)

On October 20, 2016, Caputo observed the front bumper of the Pace bus Nelson had operated touching the rear bumper of another Pace bus while parked at Heritage Garage. Caputo and Shelton photographed Nelson's bus and saw damage on its front. Dines also investigated the

accident, observing the buses touching. The accident was graded preventable. (Defs' SOF, ¶¶ 23-24.)

Nelson did not report the accident to Pace. Klafeta reviewed video of the accident, showing Nelson's bus making contact with the parked bus in front of him and Nelson exiting his bus to confirm it touched the adjacent bus. Klafeta decided to terminate Nelson because Kafeta believed that Nelson could not credibly deny knowing of the accident. Nelson filed a grievance that Pace denied. The Union declined to arbitrate the grievance. (Defs' SOF, ¶¶ 25-27.)

### E. Plaintiff Christi Marshall.

Marshall was employed by Pace from October 2015 to approximately October 2017, as a full-time bus Operator at Heritage Garage. Marshall was terminated by Pace in September 2016 for failing to report an accident. Marshall was reinstated with back pay in June 2017, following a grievance arbitration finding that she did not know about the accident. In July 2017, Marshall received a written warning for a preventable accident that occurred after her reinstatement. Dines was involved in the investigation and Dispatch Supervisor Delois Jenkins wrote the service interruption report. On July 27, 2017, Marshall was suspended pending investigation of a July 25, 2017 collision of a bus she was operating. That accident was graded preventable. Dines was involved in investigating the collision and Jenkins wrote the service interruption report. (Defs' SOF, ¶¶ 29-35.)

On October 3, 2017, Marshall was involved in a preventable collision, her third preventable accident in a rolling 12-month period. On October 17, 2017, Marshall's employment was terminated for having three preventable accidents in a rolling 12-month period. Marshall unsuccessfully grieved her second termination. Either Murry or Klafeta reminded Marshall that she could ask the National Safety Council to review the accident; she did not do so. (Defs' SOF, ¶¶ 36-38.)

## II.    STANDARD

Summary judgment must be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgement as a matter of law. Fed.R.Civ.P. 56(a); *Rauen v. U.S. Tobacco Mfg. Ltd. P'ship*, 319 F.3d 891, 895 (7th Cir. 2003). "In discrimination cases, when a defendant moves for summary judgment, the singular question … is whether the plaintiff has introduced evidence that would permit a reasonable factfinder to conclude that the plaintiff's race … caused the discharge or other adverse action." *Igasaki v. Ill. Dept. of Fin. & Pro. Regul.*, 988 F.3d 948, 957 (7th Cir. 2021) (internal quotes and citations omitted.)

## III.   ARGUMENT

### A.    Summary Judgment Should be entered for Defendants on Plaintiffs' Disparate Impact Claims under Title VII, § 1981, and the Illinois Civil Rights Act.

#### 1.    Plaintiffs' raw numerical comparisons fail to raise a triable issue of disproportionate impact on African-American Operators.

"A disparate impact exists where a specified employment practice, although neutral on its face, has a disproportionally negative effect on members of a legally protected class." *Vitug v. Multistate Tax Comm'n*, 88 F.3d 506, 513 (7th Cir. 1996) (citation omitted); *Cary v. Ne. Illinois Reg'l Commuter R.R. Corp.*, No. 19 C 03014, 2020 WL 1330654, at *4 (N.D. Ill. Mar. 22, 2020) ("[C]ourts look to federal civil-rights statutes to guide the interpretation" of the Illinois Civil Rights Act.) To establish disparate impact, a plaintiff must first identify a specific practice; "it is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact." *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005). Second, a plaintiff must present "statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." *Puffer v. Allstate Ins. Co.,* 675 F.3d 709, 717 (7th Cir. 2012) (internal quotations and citation omitted).

5

### i. Plaintiffs fail to identify a specific employment policy or practice giving rise to a disparate impact on African-American Operators.

"Plaintiffs generally cannot attack an overall decision-making process in the disparate impact context, but must instead identify the particular element or practice within the process that causes an adverse impact." *Stout v. Potter*, 276 F.3d 1118, 1124 (9th Cir. 2002). An employer's "arbitrary methods and subjective practices of investigation and decision-making" is not a specific employment practice that may be attacked using a disparate impact theory. *Combs v. Grand Victoria Casino & Resort*, No. 1:08CV00414RLYJMS, 2008 WL 4452460, at *3 (S.D. Ind. Sept. 30, 2008) (distinguishing *Meachem v. Knolls Atomic Power Lab*, 554 U.S. 84 (2008), because plaintiffs there attacked employer's process for deciding layoffs through its managers' scoring employees in certain areas; though scoring involved subjectivity, the specific practice allegedly having a disparate impact was the scoring process – not "subjective decision making.").

Plaintiffs allege that Murry's exercising discretion in administering discipline under multiple policies disproportionately impacted African-American Operators. This challenge to discipline at Heritage Garage fails to identify a specific employment practice. *See Welch v. Eli Lilly & Co.*, 585 F. App'x 911, 912–13 (7th Cir. 2014) (culture of giving supervisors great say in hiring, discharge, and disciplinary decisions was not a specific employment practice subject to challenge under a disparate impact theory); *Aberman v. Bd. of Educ. of City of Chicago*, 242 F. Supp. 3d 672, 685 (N.D. Ill. 2017) (plaintiff's claim, that defendant injected her personal bias into teacher discipline, failed to allege a specific employment practice). Plaintiffs here fail to identify a specific employment practice. This alone forecloses their disparate impact claims.

### ii. Plaintiffs fail to show a causal connection between any specific employment practice and an alleged disparate impact.

A disparate impact claim that relies on a statistical disparity but does not demonstrate a causal connection fails. *See Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 542 (2015). "A robust causality requirement ensures that '[r]acial imbalance ... does not, without more, establish a prima facie case of disparate impact' and thus protects defendants from being held liable for racial disparities they did not create." *Id.* (citation omitted). To satisfy this requirement, "[t]he plaintiffs' analysis must take into account the major variables one might expect to cause a statistical disparity… [and] eliminate 'the most common non-discriminatory reasons' for any suggested disparity." *Mozee v. Am. Com. Marine Serv. Co.*, 940 F.2d 1036, 1047 (7th Cir. 1991) (finding relative percentages of African-American faculty were "merely a few raw numbers without analysis," insufficient to show disparate impact).

Here, Plaintiffs present numerical comparisons of the number of African-American and non-African-American employees at Heritage Garage who were suspended or terminated for violating various Pace policies. (*See* Plaintiffs' Summary of Voluminous Personnel Records and Human Resources Data ("Plaintiffs' Summary"), DKT 109-3, Ex. 32.) These "broad statistical differences" in the "overall number of suspensions and terminations" do not "isolate incidents in which Murry's involvement was significant and substantially similar." *See* Opinion and Order, DKT 144, pp. 15, 17. They also fail to account for material differences in: (i) rates of discipline depending on how violations are reported; (ii) rates of discipline for particular offenses; (iii) rates of discipline depending on the decision-maker(s) involved other than Murry; and (iv) rates of discipline for employees utilizing the grievance system and other appeal processes.

Further, Plaintiffs' Summary ignores extensive evidence that would eliminate the most common non-discriminatory explanation for specific terminations, including where:

- Murry adopts the recommendation of the Superintendent of Maintenance to terminate a mechanic for a workplace safety violation reported by the Maintenance foreman. (Defs' SOF, ¶ 4.)

- An Operator is terminated for incurring three and one-half Miss Outs in a rolling 12-month period; however, the Operator and Pace enter into a last chance agreement whereby the Operator is reinstated and agrees that if she incurs another Miss Out within the 12-month period, she will be terminated without recourse to a grievance arbitration. Within four weeks, the Operator incurs another Miss Out and voluntarily resigns. (Defs' SOF ¶ 66.)

- A probationary Operator is not terminated after having an accident during training and failing to complete an accident report. Safety and Training Manager Caputo was on the bus when the accident occurred and determined a formal report was not needed; Caputo's decision was not reviewed by Murry or anyone else at Pace. (Defs' SOF, ¶ 67.)

- An Operator grieves the grading of an accident as preventable, resulting in the Union and Pace agreeing to send the investigation to Department Manager of Safety/Training Pappas, who changes the grading to not preventable. (Defs' SOF, ¶ 68.)

Equally problematic for Marshall is Plaintiffs' Summary failing to take into account whether an accident was *properly* graded preventable – even though Marshall was terminated for having three preventable accidents in a 12-month period. Grading an accident requires the decision-maker to analyze all the circumstances of a particular accident under Pace's Standard Operating Procedures, considering all available evidence (video, photographic, testimonial). (Defs' SOF, ¶ 11.) An incorrect grading decision is not discriminatory unless comparable individuals outside the protected category were treated more favorably under similar circumstances. *See Hamer v. Neighborhood Hous. Servs. of Chicago*, No. 12 C 10150, 2015 WL 5439362, at *11 (N.D. Ill. Sept. 10, 2015, *aff'd*, 897 F.3d 735 (7th Cir. 2018) ("Plaintiff cannot establish pretext by simply arguing that [her employer] was mistaken about its assessment of her performance relative to [a comparator's] performance, or that [the employer's] decision was wrong.") Here, six decision-making bodies or individuals may participate in the final grading of an accident (Defs' SOF, ¶ 11), involving myriad facts and circumstances of the accident.

Plaintiffs' Summary does not isolate situations that are comparable to the grading of Marshall's accidents.

Numerical comparisons that do not account for material variables cannot establish statistical significance. The "mere fact" that more African-American employees were discharged or suspended than non-African-American employees does not necessarily mean a disproportionate number of African-American employees were discharged. *Zmigrocki v. Cook County*, No. 12 C 9697, 2015 WL 500621, at *2 (N.D. Ill. Feb. 4, 2015) (granting summary judgment for defendant where plaintiff's summary chart terminations excluded certain information and failed to show how other terminations were related to the plaintiff's termination). If more African-American employees met the criteria for discipline than non-African-American employees, then proportionately, a larger number of African-American employees would be expected to be terminated. *Id*.

Plaintiffs also do not present evidence of a statistically significant adverse impact using a regression analysis or any other recognized statistical method. Even a rudimentary analysis of the data under the 80% rule demonstrates the absence of discriminatory rates of discipline at Heritage.[1] Indeed, this Court barred plaintiffs' expert, Dr. Peery, from testifying that there are racial disparities in discipline at Heritage Garage because her opinion that racial disparity existed at Pace was "untethered to any empirical analysis." Opinion and Order, DKT 168, p. 6. Because Plaintiffs' Summary does not account for material variables, it fails to demonstrate the required causal

---

[1] Of the 133 African-Americans listed on Plaintiffs' Summary, 79 (59.4%) had zero suspensions. Of the 73 non-African-Americans, 48 (65.8%) had zero suspensions. Because the rate at which African-Americans avoided suspension is *more than* 80% of the rate at which non-African-Americans avoided suspensions (i.e., 59.4% ÷ 65.8% = 90.3%), suspensions do not have a discriminatory effect on African-Americans. *E.g., Phillips v. Cohen*, 400 F.3d 388, 399 (6th Cir. 2005) ("An EEOC regulation provides, as a rule of thumb, that if the percentage selected from the pool comprises 80% or less of the percentage selected from the non-protected group, a discriminatory effect exists. 29 C.F.R. § 1607.4(d).").

connection between any specific policy and a purportedly disproportionate impact on African-American Operators.

### 2. Defendants amply demonstrate that the discipline issued to each Plaintiff was job related and consistent with business necessity.

#### i. The business necessity standard applies to disciplinary policies.

Plaintiffs have not presented sufficient statistical evidence showing that any specific practice of Defendants caused a disparate impact. Had Plaintiffs done so, the burden then would shift to Defendants "to demonstrate that the employment practice is job related for the position in question and consistent with business necessity." *Puffer,* 675 F.3d at 717 (internal quotations and citation omitted). To determine whether Pace's disciplinary policies are job related and consistent with business necessity, the court "considers whether the practice bears a manifest relationship to the employment in question, whether it is necessary to safe and efficient job performance or essential to safe and efficient conduct of the employer's business, and whether it is consistent with genuine business needs." *Chicago Tchrs. Union, Loc. 1 v. Bd. of Educ. of City of Chicago*, 419 F. Supp. 3d 1038, 1050 (N.D. Ill. 2020), *aff'd sub nom. Chicago Tchrs. Union v. Bd. of Educ. of the City of Chicago*, 14 F.4th 650 (7th Cir. 2021). This analysis must be "limited" so that regulated entities may make "practical business choices." *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 520 (2015).

The question is not whether Pace's disciplinary practices are "absolutely necessary" to its functioning, or whether discipline relates to the "most essential measures" of Plaintiffs' performance. Rather, the question is whether there is a "reasonably tight fit between the challenged criterion and the actual demands of the job… such that the criterion reflects a reasonable and 'practical business choice.'" *Chicago Tchrs. Union*, 419 F. Supp. 3d at 1050, citing *Texas Dep't of Hous.*, 576 U.S. at 533 (internal quotation marks omitted).

10

In the rare instances where plaintiffs have shown a prima facie case of disparate impact based on a disciplinary policy, courts have found that such policies provide legitimate, job-related grounds for adverse action where they are intended to ensure safe and effective job performance or compliance with legitimate legal requirements. *See e.g., Finley v. Fla. Par. Juv. Det. Ctr.*, No. CIV.A. 12-726, 2013 WL 1344576, at *8 (E.D. La. Apr. 3, 2013), *aff'd*, 574 F. App'x 402 (5th Cir. 2014) (finding termination resulting from sexual harassment investigation was related to juvenile detention center's job and justified by center's business need to provide safe but restrictive environment for troubled juveniles, compliant with Title VII's prohibition on workplace harassment); *Williams v. Wells Fargo Bank, N.A.*, 901 F.3d 1036, 1040-42 (8th Cir. 2018) (holding bank showed on disparate impact claim that policy of terminating persons with prior convictions for offenses involving dishonesty was job-related and consistent with business necessity.) Thus, "[a]n employer has the right to adopt a system of discipline for its plant and place discretion in the administration of the system on its supervisory and managerial employees, as long as the system is not intended for or is administered in a way that discriminates against an employee on the ground … of race … or has a disparate impact on a definable group." *Coates v. Johnson & Johnson*, No. 78 C 1342, 1982 WL 285, at *52 (N.D. Ill. Apr. 9, 1982), *on reconsideration in part*, 1982 WL 347 (N.D. Ill. June 11, 1982), *and aff'd*, 756 F.2d 524 (7th Cir. 1985).

### ii. Business necessity supports Pace's disciplinary policies that Plaintiffs violated.

Pace and Murry demonstrate clearly legitimate business and safety reasons for each policy that Nelson and Marshall were disciplined for violating. The discipline underpinning Plaintiffs' disparate impact claims relates to Pace's policies for: (1) maintaining a valid driver's license (giving rise to Nelson's suspension in 2015); (2) Miss Outs (giving rise to Nelson's one-day suspensions in 2015 and 2016); (3) timely accident and driving reports (giving rise to Nelson's

one-day suspension in September 2016, Nelson's termination in October 2016, and Marshall's September 2016 (initial) termination); and (4) vehicle accidents (giving rise to Marshall's October 2017 termination). (Defs' SOF ¶¶ 25-32, 36-39). Both Nelson and Marshall met with their supervisors before the supervisors decided to terminate their employment. (Defs' SOF ¶¶ 24, 37.) Additionally, both Nelson and Marshall were entitled to grieve their terminations, and as to Marshall's termination for three preventable accidents in a 12-month period, to seek review by the National Safety Council. (Defs' SOF ¶¶ 27, 32, 37, 38.)

Pace's policies at issue – providing for suspension or termination of Operators who: (i) are routinely involved in preventable accidents (ii) fail to report accidents or incidents, (iii) fail to maintain a valid driver's license, and (iv) fail to timely report to work – are plainly related to an Operator's job of operating a public bus in a safe and timely manner. These policies are also consistent with Pace's business need to provide safe and timely public transit services. That some modicum of discretion is involved in administering these policies does not detract from their validity. *See Coates*, 1982 WL 285, at *52. Particularly given Nelson's and Marshall's pre-termination meetings with their supervisors and their right to grieve or appeal disciplinary decisions, the court should decline to re-examine Pace's or Murry's decisions that Pace's legitimate policies were violated. *See Appelbaum v. Milwaukee Metro. Sewerage Dist.*, 340 F.3d 573, 579 (7th Cir. 2003) (finding the court is not "a super-personnel department that sits in judgment of the wisdom of an employer's employment decisions."); *Martin v. Dept. of Corrections,* 2005 WL 906515, at *8 (S.D. Ind. 2005) (where employee had opportunity to be heard in pre-disciplinary meeting, court will not re-examine employer's credibility determination when deciding if employer met its burden). There is no material fact dispute that Defendants have shown that Pace's discipline policies are job related and consistent with business necessity.

> **3.** **Plaintiffs fail to suggest a "less discriminatory" method to administer discipline at Heritage Garage or provide admissible evidence of such method.**

"[B]efore rejecting a business justification—or, in the case of a governmental entity, an analogous public interest—a court must determine that a plaintiff has shown that there is 'an available alternative ... practice that has less disparate impact and serves the [entity's] legitimate needs.'" *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 533 (2015) (citation omitted). The burden is on "the plaintiff to show that the employer refused to use an available yet equally valid and less discriminatory practice." *Chicago Tchrs. Union*, 14 F.4th at 655, citing *Puffer*, 675 F.3d at 717; 42 U.S.C. § 2000e-2(k)(1)(A)(ii).

To demonstrate an equally valid alternative practice, plaintiffs must "spell out what factors" the employer should have considered and explain "precisely how" the employer could have accomplished the alternative while still supporting its business needs. *Chicago Tchrs. Union*, 14 F.4th at 657. Plaintiffs have not demonstrated an alternative to Pace's disciplinary policies. They have not explained: (a) what factors Defendants should have but failed to consider when disciplining Plaintiffs; (b) precisely how Pace could have increased oversight, accountability, or transparency of Murry's discipline of Plaintiffs; or (c) the specific steps Defendants should have taken to limit the alleged exercise of discretion, while still achieving Pace's legitimate business need to efficiently issue appropriate discipline. Plaintiffs also have not shown a "less discriminatory" method to administer discipline at Heritage Garage.

Additionally, Plaintiffs have not demonstrated that Pace had an "available" opportunity to adopt any such alternative for its unionized workforce, where a proposed alternative policy or practice must be consistent with Pace's collective bargaining agreements. *See Chicago Tchrs. Union*, 14 F.4th at 656. Plaintiffs failed to carry their burden to articulate an equally valid, less

13

discriminatory alternative to Pace's disciplinary processes. For all the foregoing reasons, Plaintiffs' disparate impact claims fail as a matter of law.

**B.      Summary Judgment Should be Entered for Defendants on Plaintiffs' Disparate Treatment Claims.**

Each remaining count of Plaintiffs' Complaint alleges federal or state law claims that Defendants were motivated by intentional discrimination against African-Americans when they suspended and terminated Plaintiffs. These claims follow the same framework of a Title VII claim, which can proceed under the *McDonnel Douglas* method or through evidence permitting a reasonable factfinder to conclude Plaintiffs' race caused the adverse employment action. *Reives v. Ill. State Police*, 29 F.4th 887 (7th Cir. 2022); *Barnes v. Bd. of Trustees of Univ. of Illinois*, 946 F.3d 384, 389 (7th Cir. 2020) (Title VII and Section 1983 claims have same framework); *Fields v. Bd. of Educ. of City of Chicago*, 928 F.3d 622, 625 (7th Cir. 2019) (Title VII and Section 1981 claims have same framework); *Pettengell v. Scott*, 369 F. Supp. 3d 882, 892 (N.D. Ill. 2019) (Title VII and Illinois Human Rights Act claims have same framework).

**1.      Plaintiffs cannot demonstrate a genuine issue of material fact through the McDonnell Douglas framework.**

Under the *McDonnell Douglas* framework, a plaintiff must demonstrate that (1) he is in a protected class, (2) he met the employer's legitimate expectations, (3) he was subject to an adverse employment action, and (4) similarly situated employees who were not in his protected class were treated more favorably. *Reives*, 29 F.4th at 887.[2]

As to the second mandated showing, if an employee cannot contest the legitimacy of the employer's requirements and he is subjected to an adverse employment action because he failed to meet those requirements, that "'dooms' his *prima facie* case under the *McDonnell Douglas*

---

[2] Defendants do not dispute that Plaintiffs are members of a protected class and their suspensions and terminations were adverse employment actions.

framework." *Leach v. Brennan*, No. 15 C 11392, 2018 WL 4590299, at *6 (N.D. Ill. Sept. 25, 2018). In *Leach*, the employee failed to timely report damage he caused to his employer's van while operating it, and did so only when he saw his supervisor inspecting the damage. *Id.* The employee was suspended because of his delayed reporting and had no basis to contest the legitimacy of the reporting rule. *Id.* He therefore failed to show that he met the employer's legitimate business expectations. *Id.*

To satisfy the fourth element of *McDonnell Douglas*, similarly situated employees "must be directly comparable in all material respects." *Johnson v. Chicago Transit Auth.*, No. 14 C 9432, 2017 WL 1105446, at *3 (N.D. Ill. Mar. 24, 2017), *aff'd*, 699 F. App'x 558 (7th Cir. 2017) (internal quotations and citations omitted). Plaintiff must show any comparators "reported to the same supervisor, engaged in the same conduct, and had the same qualifications, but also [ ] that there were no differentiating or mitigating circumstances as would distinguish ... the employer's treatment of them." *Id.*

When demonstrating disparate treatment for similar conduct, a plaintiff must show her comparator "made the same *type* of error . . . ." *Johnson*, 2017 WL 1105446, at *4 (emphasis added); *Smizer v. Cmty. Mennonite Early Learning Ctr.*, No. 10 C 4304, 2013 WL 1154263, at *7 (N.D. Ill. Mar. 19, 2013) (summary judgment granted for employer where plaintiff could not show comparators "committed or were accused of committing the same or similar infractions as [plaintiff] was, and were treated materially differently as a result.") (alteration added). "[T]he plaintiff must prove that the defendant extended leniency to similarly situated employees outside the plaintiff's protected class who engaged in similar conduct." *David v. Donahoe,* No. 11 C 3720, 2013 WL 676243, at *6 (N.D. Ill. Feb. 25, 2013) (citation omitted).

Here, Plaintiffs cannot show they met Pace's legitimate business expectations or that Pace treated supposed comparators more favorably. Plaintiffs were suspended and terminated for

violating legitimate, non-discriminatory rules regarding accident prevention and reporting, valid driver's licensure, and attendance. Pace applied those rules equally to other Operators:

**Comparable discipline of non-African-American employees.** Just like Marshall: (i) Operator Jacob Mack (Caucasian) received a written warning for his first preventable accident in a rolling 12-month period and a suspension for his second (Defs' SOF, ¶¶ 40-41); and Murry approved the Superintendent of Maintenance's recommendation to terminate building maintenance employee John Porro (Caucasian) for his third preventable accident in a rolling 12-month period (Defs' SOF, ¶¶ 42-43.)

**No evidence of non-African-American employees treated more favorably than Plaintiffs.** Nelson was suspended and then terminated for failing to report an accident (Defs' SOF, ¶¶ 21, 26), and Marshall's first termination occurred for the same infraction (Defs' SOF, ¶ 31.) Plaintiffs' purported comparators – Raymond Ulrich (Caucasian), Romeo Zamudio (Hispanic), and Michael Rooney (Caucasian) – are not similarly situated because they each made a *delayed* report of their accident or incident (Def's SOF, ¶¶ 44-49.) Both Pace's Labor Contract and its practice distinguish a delayed report from the more serious infraction of not reporting at all (Defs' SOF, ¶ 9.) Similarly, Marshall points to Richard Delgado (Hispanic) and Michael Neilson (Caucasian) as being treated more favorably because she asserts they were not terminated for having three preventable accidents in a rolling 12-month period. However, each had only two preventable accidents in a rolling 12-month period, not three (Defs' SOF, ¶¶ 51, 52, 55.) The only material respect in which Delgado and Nielson are comparable to Marshall is that, like her, Delgado and Nielson each were suspended for their second preventable accident in a rolling 12-month period (Defs' SOF, ¶¶ 51, 52, 54, 55.) Because there is no evidence that non-African-American employees were treated more favorably than Plaintiffs, their disparate treatment claims fail under the *McDonnell Douglas* framework.

16

### 2. Plaintiffs cannot otherwise demonstrate a genuine issue of material fact under the Ortiz Standard.

Plaintiffs can survive summary judgment under *Ortiz v. Werner Enterprises, Inc.* only if all the evidence "in a single pile… as a whole" were to support an inference of discrimination. 834 F.3d 760, 766 (7th Cir. 2016); *Tyburski v. City of Chicago*, 964 F.3d 590, 599 (7th Cir. 2020) ("As long as the court considers the evidence as a whole, it may also use the *McDonnell Douglas* framework as a supplemental tool."). Following *Ortiz*, the Seventh Circuit has "identified three broad types of circumstantial evidence that will support an inference of intentional discrimination: ambiguous or suggestive comments or conduct; better treatment of people similarly situated but for the protected characteristic; and dishonest employer justifications for disparate treatment." *Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 929 (7th Cir. 2020). But no such circumstances are of record here so as to "permit a reasonable juror to conclude" that an employee's protected characteristic "was the but-for cause of her firing." *Myvett v. Kraft Heinz Foods Co., LLC*, No. 17 C 8711, 2020 WL 1248342 (N.D. Ill. Mar. 16, 2020).

### i. Plaintiffs present no evidence of better treatment of people similarly situated but for the protected characteristic.

Though not *required* to survive summary judgment following *Ortiz*, evidence of similarly situated employees being treated better than Plaintiffs remains relevant to the court's determination. *Felder-Ward v. Flexible Staffing Servs. Inc.*, No. 14 C 9246, 2018 WL 1235013, at *5, *6 (N.D. Ill. Mar. 9, 2018). Indeed, it may be "difficult for the Court to determine if [an employee] was treated differently based on her race without a proper point of comparison." *Id.*; *see also Joll*, 953 F.3d at 929 ("To make these claims successfully, the plaintiffs needed to produce evidence that similarly situated non-African-American employees were treated more favorably.")

As demonstrated in Section B.1, *supra*, none of Plaintiffs' purported comparators are similarly situated. Ulrich, Zumudio, and Rooney are not viable comparators for Nelson's

termination claim because, unlike Nelson, they did report their accident or incident. Likewise, Delgado and Nielson are not relevant comparators for Marshall's termination claim because their preventable accidents were their second, not third, in a rolling 12-month period. Hence, Plaintiffs have no evidence of similarly situated employees treated better than they were under like circumstances.

Should Plaintiffs rely on their percentage comparisons as proof that similarly situated non-African-American Operators were treated more favorably than them, such evidence does not support a disparate treatment claim. Plaintiffs' percentage comparisons conspicuously fail to isolate the infractions for which Nelson and Marshall were disciplined and the particular decision-makers significantly involved. As such, Plaintiffs' raw numbers cannot show comparable non-African-American employees were treated more favorably than Plaintiffs. For this reason, the Seventh Circuit has "rejected efforts to use statistics as the primary means of establishing discrimination in disparate treatment situations." *Bell v. E.P.A.,* 232 F.3d 546, 552 (7th Cir.2000). Especially where Plaintiffs present only straight percentage comparisons that are not statistically significant, such evidence is insufficient support for a disparate treatment claim. *Anderson v. Nat'l R.R. Passenger Corp.*, No. 03 C 7589, 2006 WL 931699, at *7 (N.D. Ill. Apr. 6, 2006), citing *King v. Gen. Elec., Co.,* 960 F.2d 617, 627 (7th Cir.1992). No evidence of record indicates that similarly situated non-African-American employees were treated better than Plaintiffs.

### ii. There are no ambiguous or suggestive comments or conduct that any decision-maker engaged in racially-motivated behavior.

Plaintiffs have no evidence, and do not even allege, that Murry or any other supervisor or decision-maker ever made a racial slur, created a racially hostile work environment, or engaged in racially-related behavior. While Plaintiffs contend that Pace and Murry were previously accused of discrimination by four other Operators, none of those accusations alleged any comments or acts

18

demonstrating racial animus nor any discriminatory application of the policies that Nelson and Marshall were terminated for violating (Defs' SOF, ¶¶ 56-65.) Plaintiffs do not have the second type of circumstantial evidence that courts have found to support a claim under *Ortiz*.

### iii. Plaintiffs provide no evidence that Defendants' justifications for their discipline were dishonest or pretextual.

Plaintiffs do not seriously dispute that Defendants honestly believed they disciplined Plaintiffs for valid, job-related reasons. Instead, Plaintiffs' experts, Dr. Peery and Ms. Plunkett, merely opine that Defendants' disciplinary decision-making processes are subjective and potentially permit the influence of bias. But several courts have held that a policy permitting the exercise of discretion or subjectivity, by itself, is not a basis from which a reasonable juror could infer discriminatory intent. *See Curtis v. City of Chicago*, No. 16 C 8042, 2019 WL 3776154, at *11 (N.D. Ill. Aug. 12, 2019) ("[t]here is nothing inherently discriminatory about business expectations that involve an element of subjectivity or that may be flawed or pliable in some respects—of course, so long as they are not pretexts for race discrimination"); *Tyburski v. City of Chicago*, No. 16 C 09228, 2018 WL 3970150, at *8 (N.D. Ill. Aug. 20, 2018) ("Although the grading of the verbal exam may be somewhat subjective, the use of a subjective, even arbitrary, selection process is not proof of discrimination[.]") (cleaned up), *aff'd*, 964 F.3d 590, 600 (7th Cir. 2020) ("the use of subjective criteria alone does not suffice as evidence of pretext," instead, employee must point to "some objective evidence indicating that the subjective evaluation is a mask for discrimination") (cleaned up). The only court in this circuit to find Dr. Peery's testimony raised an issue of whether management participated in a racist culture occurred where several emails were exchanged among management containing explicit racial stereotypes and animus. *Martin v. F.E. Moran, Inc.*, 2017 WL 1316255, *11 (N.D. Ill. Apr. 10, 2017). Because no similar statements or conduct exist in this case, *Martin* is inapplicable.

Any discretion that Defendants exercised was influenced, at least in part, by input from African-American supervisors. In all but one of the disciplinary decisions underlying Plaintiffs' claims (Nelson's suspension for failing to report his expired driver's license), one or more African-American supervisors were involved in the discipline imposed. Additionally, the record shows that non-African-American employees Mack and Porro were treated the same as Plaintiffs under similar circumstances. *See* Section B.1, *supra*. These facts affirmatively demonstrate the absence of discriminatory animus when considering the evidence "in a single pile… as a whole" as instructed by *Ortiz*. Because Plaintiffs have none of the circumstantial evidence that courts applying *Ortiz* have found to raise a triable fact of intentional discrimination, Plaintiffs' disparate treatment claims fail under the *Ortiz* standard.

### 3. Plaintiffs present no evidence from which a jury could find a pattern or practice of discrimination.

Pattern or practice claims "represent a theory of intentional discrimination." *Puffer*, 675 F.3d at 716-717. This requires plaintiffs to "prove that discrimination 'was the company's standard operating procedure – the regular rather than the unusual practice.'" *Van v. Ford Motor Co.*, 332 F.R.D. 249, 274 (N.D. Ill. 2019) (citations omitted). To establish a prima facie pattern or practice claim, Plaintiffs must begin by identifying the specific employment practice being challenged. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 357 (2011). If Plaintiffs make this showing, they must then proffer evidence that "eliminate[s] the most common nondiscriminatory reasons for the defendant's alleged action, for example, by showing that he or she is a member of a protected group and is otherwise basically similarly situated to members of the unprotected group." *Coates v. Johnson & Johnson*, 756 F.2d 524, 531 (7th Cir. 1985) (citation omitted). This requires "significant evidence of the alleged routine, *e.g.,* statistical evidence showing the disparities and individual testimony recounting specific instances of discrimination." *Nelson v. Pace Suburban*

*Bus*, No. 17 C 7697, 2020 WL 6565241, at \*7 (N.D. Ill. Nov. 9, 2020), citing *King*, 960 F.2d at 624. Plaintiffs here have no such evidence.

As this Court found in denying Plaintiffs' motion for class certification, "Plaintiffs only present broad percentage comparisons of overall numbers of suspensions and terminations, and not individual testimony capturing specific instances of *intentional* discrimination by Murry." *Id*. (emphasis in original). Plaintiffs' data, amounting to no more than raw numbers, and the absence of any testimony showing Murry harbored discriminatory animus, are fatal to Plaintiffs' pattern or practice claim.

For the same reasons that Plaintiffs' Summary (Ex. 32) cannot establish disparate impact, it likewise does not provide evidence sufficient to permit a jury to find an allegedly discriminatory routine. Plaintiffs do not isolate those incidents where non-African-American Operators engaged in similar conduct (i.e., the same specific infractions for which Plaintiffs were disciplined) but were not disciplined or received lesser discipline. Raw numbers that do not account for differences in underlying conduct are not probative because they do not show disparate treatment between comparable individuals. *Ahuja v. Danzig*, 14 F. App'x 653, 658 (7th Cir. 2001).

Further, Plaintiffs do not identify any specific instance of discrimination involving other African-American Operators that would bolster their attempt to present statistical evidence. Plaintiffs allege only that, in 2009, three former employees filed a federal suit accusing Murry and her former supervisor of discriminating against them, and in 2015, one person lodged an internal complaint of race discrimination against Caputo, Murry, and Klafeta. *See* DKT 110, Plaintiffs' Memo in Support of Rule 23 Class Certification, p. 13. These four individuals' allegations are too dissimilar to Plaintiffs' circumstances to show a triable pattern or practice claim.

In denying Plaintiffs' motion for class certification, this Court determined that these prior allegations failed to establish individual testimony capturing specific instances of intentional

discrimination by Murry – for good reason. The prior federal lawsuit, *Johnson v. Pace Suburban Bus, et al.,* contains a panoply of allegations purportedly demonstrating a pattern or practice of discrimination, including that Pace, Murry, and Kommer imposed harsher discipline on African-Americans, forced them to resign, discriminatorily denied them promotions or demoted them, and provided them unequal training and assignments. None of the 170 paragraphs in the *Johnson* complaint alleges any overt acts of discrimination or the discriminatory application of the same policies Nelson and Marshall were terminated for violating. Further, none of the *Johnson* allegations allege disparate treatment, as the complaint does not identify any individuals who were treated better than the three plaintiffs under similar circumstances. The *Johnson* complaint was not verified, no discovery was conducted, and no one proffered an affidavit supporting the unsworn allegations. (Defs' SOF ¶¶ 57, 61.) The case was dismissed with prejudice in connection with a settlement in which Pace admitted no liability or wrongdoing. (Defs' SOF, ¶ 62.) Such non-evidentiary allegations do not permit Plaintiffs' pattern or practice claim to survive summary judgment.

Moreover, all three *Johnson* plaintiffs allege they separated from Pace based on policy violations, resignations, and other circumstances thoroughly dissimilar from Nelson or Marshall:

- Plaintiff Johnson alleged she resigned before she met with Murry's supervisor, Kommer, because she feared she would be terminated at that meeting for accumulating what she believed were too many Miss Outs. (Defs' SOF, ¶ 58.)

- Plaintiff Scates alleged she resigned because she believed that she would be terminated for accumulating too many miss outs over the course of over one year, even though Pace's policies expressly prohibit discipline for miss outs that are over 12 months old. (Defs' SOF, ¶ 59.)

- Plaintiff Ento alleged she resigned because she was denied a meeting with Murry and a Union representative before continuing to work a route she believed was not timely assigned to her. (Defs' SOF, ¶ 60.)

22

Neither Nelson nor Marshall resigned – they were involuntarily terminated. Further, they were not terminated as a result of Pace's Miss Out policy. Thus, Johnson's, Scate's, and Ento's unsubstantiated allegations are irrelevant to any alleged pattern or practice of discrimination to which either Nelson or Marshall supposedly were subjected.

In 2015, Fonn Moore made an internal complaint of discrimination after she was terminated for three preventable accidents in a 12-month time period. (Defs' SOF, ¶ 63.) In her internal complaint, Ms. Moore does not contend that she was wrongfully terminated in connection with Pace's vehicle accident policy. Instead, she takes issue with her supervisors' treatment of her in other settings. Moore alleged that: (i) Murry fired her after Moore submitted FMLA paperwork seeking leave to care for her daughter, retaliated against her for declining to drive a downtown route, and refused to provide her training (Defs' SOF, ¶ 64); (ii) Caputo yelled at her in front of her coworkers while she was eating lunch and wrote her up for refusing to look at pictures of a vehicle accident (Defs' SOF, ¶ 65); and (iii) Klafeta accused her of lying, refused to listen to her, and treated her rudely during meetings (Defs' SOF, *Id.*). None of Moore's allegations are remotely similar to the circumstances of any adverse action claimed by Nelson or Marshall.

The dearth of probative statistical evidence or specific instances of discrimination shows that Plaintiffs fail to raise a triable fact issue as to the pattern or practice method of proof. *Cf. Int'l Brotherhood of Teamsters v. United States,* 431 U.S. 324, 337 (1977) (statistical evidence demonstrating exclusion of Black and Spanish job applicants, and individual testimony of over 40 specific instances of similar discrimination, sufficed to carry burden on pattern or practice method of proof); *Chisholm v. U.S. Postal Serv.,* 665 F.2d 482, 495 (4th Cir. 1981) (pattern or practice of discriminatory promotions shown by admissible statistical evidence of disproportionately low promotion rate of Black workers, supported by testimony of 20 current and former Black employees recounting their unsuccessful efforts to obtain promotions). Nelson and Marshall have

no such evidence from which a jury could find a pattern or practice of discrimination – nor evidence that Pace discriminated against them directly.

### C. Plaintiffs' Civil Conspiracy Claims Cannot Survive Summary Judgment.

Count V alleges a civil conspiracy to deprive Plaintiffs of their federally protected rights under Sections 1985 or 1986. To establish a civil conspiracy based on race under 42 U.S.C. §§ 1985 and 1986, a plaintiff must show, among other things, that an actual conspiracy existed (i.e., that two or more people agreed to injure plaintiff) and that racial animus drove the conspiracy. *Alexander v. City of South Bend*, 433 F.3d 550, 556-57 (7th Cir. 2006). Section 1986 carries the additional requirement that the defendant "could have stepped in" to prevent the conspiracy, but failed to do so. *Tillman v. Burge*, 813 F. Supp. 2d 946, 987 (N.D. Ill. 2011).

As established above, there is no evidence of racial animus. Additionally, Plaintiffs do not "show that the conspirators agreed to inflict injury upon him; in other words, that they acted with a single plan, the general nature and scope of which was known to each conspirator." *Green v. Benden*, 281 F.3d 661, 665 (7th Cir. 2002). Defendants who simply act pursuant to a custom or policy proscribed by a higher authority do not thereby participate in a conspiracy. *Photos v. Twp. High Sch. Dist. No. 211*, 639 F. Supp. 1050, 1055 (N.D. Ill. 1986). Plaintiffs do not allege or show with whom Murry conspired or raise a material fact issue about Murry and her unidentified co-conspirator acting pursuant to anything other than official Pace policy. No dispute of material fact prevents judgment from being entered for Defendants on Plaintiffs' federal conspiracy claims.

### D. Counts VI and VII Must Be Dismissed For Failure to Exhaust Administrative Remedies.

No evidence of record shows that the Illinois Department of Human Rights issued either Plaintiff a notice of his or her right to sue under the Illinois Human Rights Act ("IHRA"). The EEOC's issuance of a right to sue letter does not satisfy a plaintiff's obligation to exhaust her

administrative remedies under Illinois law. *E.g., Baranowska v. Intertek Testing Servs. NA, Inc.*, No. 19 C 6844, 2020 WL 1701860, at *3 (N.D. Ill. Apr. 8, 2020); *Hankins v. Best Buy Co.*, No. 10 CV 4508, 2011 WL 6016233, at *6 (N.D. Ill. Dec. 2, 2011). As a result, Plaintiffs' IHRA claims (Counts VI and VII) must be dismissed with prejudice. *See id*.

## IV.    CONCLUSION

For the forgoing reasons, Defendants Pace Bus Services and Margaret Murry submit that based on the undisputed material facts, all Plaintiffs' claims fail as a matter of law.  The Court should grant Defendants summary judgment on all Plaintiffs' claims.

Dated:  May 5, 2022                                           Respectfully submitted,

PACE BUS SERVICES and MARGARET MURRY

By:    /s/ *David L. Weinstein*
                One of Defendants' Attorneys

David L. Weinstein (ARDC No. 3125588)
dweinstein@taftlaw.com
Rachel L. Schaller (ARDC No. 6306921)
rschaller@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive
Suite 2800
Chicago, Illinois 60601
(312) 527-4000

73199061v6