**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MAURICE NELSON and CHRISTI MARSHALL,<br><br>     Plaintiffs,<br>v.<br><br>PACE SUBURBAN BUS and MARGARET MURRY,<br><br>     Defendants. | No. 17-cv-7697<br><br>Judge Robert W. Gettleman |

**DEFENDANTS' REPLY
<u>FURTHER SUPPORTING THEIR MOTION FOR SUMMARY JUDGMENT</u>**

Dated: October 7, 2022          Respectfully submitted,

                                          PACE BUS SERVICES and MARGARET MURRY

                             By:      <u>*/s/ David L. Weinstein*</u>
                                        One of Defendants' Attorneys

David L. Weinstein (ARDC No. 3125588)
dweinstein@taftlaw.com
Rachel L. Schaller (ARDC No. 6306921)
rschaller@taftlaw.com
Benjamin S. Morrell (TBPR No. 035480)
bmorrell@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, Suite 2800
Chicago, Illinois 60601
(312) 527-4000

# TABLE OF CONTENTS

Table of Authorities ........................................................................................................ i

I.      Defendants correctly state the summary-judgment standard. ............................................. 1

II.     Plaintiffs furnish no evidence that a neutral employment practice
        caused a disparate impact on African American employees. ............................................. 3

        A.      Plaintiffs fail to identify a specific employment practice. ....................................... 3

        B.      Plaintiffs fail to produce evidence that Murry's discretion
                caused a disparate impact.................................................................... 6

        C.      Defendants have not forfeited their business necessity defense. ............................ 9

        D.      Plaintiffs' unintentional discrimination claims under ICRA f
                ail for these same reasons. ...................................................................... 11

III.    Plaintiffs point to no disputed fact upon which a reasonable jury
        could conclude that Defendants intentionally discriminated against Plaintiffs. ............... 12

        A.      Plaintiffs produce no evidence from which a jury could conclude
                that Nelson was fired because of his race. ............................................... 12

                1.      Nelson's claims fail under *McDonnell Douglas*. ...................................... 12

                2.      Nelson's claims fail under *Ortiz*. ................................................. 14

        B.      Plaintiffs produce no evidence from which a jury could conclude
                 that Marshall was fired because of her race..................................... 15

        C.      Plaintiffs raise no evidence of a discriminatory pattern or practice..................... 18

IV.     Plaintiffs' IHRA claims should be dismissed for failure to exhaust................................. 19

        A.      Defendants have not forfeited their failure-to-exhaust argument. ........................ 19

        B.      Plaintiffs failed to exhaust their IHRA claims..................................... 20

        C.      Defendants' other arguments apply to Plaintiffs' IHRA claims. ......................... 21

V.      Plaintiffs abandoned their civil conspiracy claim. ........................................................... 22

VI.     Conclusion ................................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aberman v. Bd. of Educ. of City of Chi.*,
    242 F. Supp. 3d 672 (N.D. Ill. 2017) ......................................................................................5

*Adams v. Wal-Mart Stores, Inc.*,
    324 F.3d 935 (7th Cir. 2003) ...............................................................................12, 16, 17

*Barbera v. Pearson Educ., Inc.*,
    906 F.3d 621 (7th Cir. 2018) ...............................................................................................13

*Bodenstab v. Cnty. of Cook*,
    569 F.3d 651 (7th Cir. 2009) .........................................................................................14, 16

*Brown v. Ameriprise Fin. Servs., Inc.*,
    707 F. Supp. 2d 971 (D. Minn. 2010) ...............................................................................22

*Caskey v. Colgate-Palmolive Co.*,
    535 F.3d 585 (7th Cir. 2008) ...............................................................................................13

*Chambers v. Am. Trans. Air, Inc.*,
    17 F.3d 998 (7th Cir. 1994) .................................................................................................15

*Coates v. Johnson & Johnson*,
    No. 78 C 1342, 1982 WL 285 (N.D. Ill. Apr. 9, 1982)......................................................9

*Combs v. Grand Victoria Casino & Resort*,
    No. 1:08-cv-00414-RLY-JMS, 2008 WL 4452460 (S.D. Ind. Sept. 30, 2008).........................4

*Dickey v. McDonald*,
    238 F. Supp. 3d 1068 (N.D. Ill. 2017) ...............................................................................2

*Donald v. City of Chicago*,
    539 F. Supp. 3d 912 (N.D. Ill. 2021) ...........................................................................20, 21

*Dorsey v. Morgan Stanley*,
    507 F.3d 624 (7th Cir. 2007) ...............................................................................................2

*EEOC v. O&G Spring & Wire Forms Specialty Co.*,
    38 F.3d 872 (7th Cir. 1994) .................................................................................................9

*Glob. Tech. & Trading, Inc. v. Satyam Comput. Servs. Ltd.*,
    No. 09 C 5111, 2014 WL 4057374 (N.D. Ill. Aug. 14, 2014), *aff'd sub nom.*
    *Glob. Tech. & Trading, Inc. v. Tech Mahindra Ltd.*, 789 F.3d 730 (7th Cir.
    2015) ...............................................................................................................................10, 19

i

*Harris v. Office of the Chief Judge of the Cir. Ct. of Cook Cty.*,
   673 F. App'x 537 (7th Cir. 2016) ........................................18

*Hendricks v. Lauber*,
   No. 16 C 627, 2019 WL 194376 (N.D. Ill. Jan. 15, 2019) ....................10

*Kowalczyk v. Walgreen Co.*,
   No. 03 C 8335, 2005 WL 1176599 (N.D. Ill. May 17, 2005) .................22

*Langenbach v. Wal-Mart Stores, Inc.*,
   761 F.3d 792 (7th Cir. 2014) ...........................................13

*Meacham v. Knolls Atomic Power Lab*,
   554 U.S. 84 (2008)......................................................3

*Mills v. First Federal Sav. & Loan Ass'n of Belvidere*,
   83 F.3d 833 (7th Cir. 1996) ............................................2

*Moss v. Texarkana Ark. Sch. Dist.*,
   240 F. Supp. 3d 966 (W.D. Ark. 2017).....................................17

*Mozee v. American Com. Marine Serv. Co.*,
   940 F.2d 1036 (7th Cir. 1991) ..........................................4

*Neuma, Inc. v. Wells Fargo & Co.*,
   515 F. Supp. 2d 825 (N.D. Ill. 2006) ...................................19

*Nigro v. Ind. Univ. Health Care Assocs., Inc.*,
   40 F.4th 488 (7th Cir. 2022) ...........................................2

*Oliver v. Joint Logistics Managers, Inc.*,
   893 F.3d 408 (7th Cir. 2018) ..........................................13

*Ortiz v. Werner Enters., Inc.*,
   834 F.3d 760 (7th Cir. 2016) ..........................................14

*Puffer v. Allstate Ins. Co.*,
   675 F.3d 709 (7th Cir. 2012) .........................................3, 6

*Swan v. Bd. of Educ. of City of Chi.*,
   Nos. 13 C 3623 & 13 C 3624 2013 WL 4401439 (N.D. Ill. Aug. 15, 2013)...........7

*Tabor v. Hilti, Inc.*,
   No. 09-cv-189-GKF-PJC, 2013 WL 4068781 (N.D. Okla. Aug. 12, 2013)...........10

*Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*,
   576 U.S. 519 (2015)....................................................6

*Tubergen v. St. Vincent Hosp. & Health Care Ctr., Inc.,*
   517 F.3d 470 (7th Cir. 2008) ...............................................................13

*United States v. Olano,*
   507 U.S. 725 (1993)...........................................................................10

*United States v. White,*
   737 F.3d 1121 (7th Cir. 2013) ...............................................................7

*Watson v. Fort Worth Bank & Trust,*
   487 U.S. 977 (1988) (plurality opinion) ........................................5, 7, 9

*Weiler v. Vill. of Oak Lawn,*
   86 F. Supp. 3d 874 (N.D. Ill. 2015) ......................................................11

*Welch v. Eli Lilly & Co.,*
   585 F. App'x 911 (7th Cir. 2014) .........................................................4, 5

**Statutes**

42 U.S.C. §§ 1985 and 1986...................................................................22

42 U.S.C. § 2000e-2(k)(1)(A)(i) ................................................................9

**Other Authorities**

FED. R. CIV. P. 56(a) ..............................................................................1

FED. R. EVID. 802..................................................................................18

Plaintiffs' response opposing summary judgment fails to identify a genuinely disputed fact based on which a reasonable jury could conclude that Defendants disciplined and terminated Plaintiffs because of their race. Plaintiffs assert unintentional and intentional discrimination claims. They contend that: (1) their unintentional discrimination—or "disparate impact"—claims should go to a jury because raw numerical data shows that Murry's discretion in disciplining employees resulted in harsher consequences for African Americans than for their non-African American counterparts; and (2) their intentional discrimination—or "disparate treatment"—claims should survive summary judgment because Plaintiffs were punished more harshly than other employees. Plaintiffs are wrong on both counts.

As for the disparate impact claims, Plaintiffs have not furnished evidence of a prima facie case: they have not pointed to a specific Pace policy that causes African Americans to be punished more harshly than others, nor does the numerical data they produce show that African Americans are, in fact, punished more harshly. In addition to an absence of evidence showing a prima facie case of unintentional discrimination, Plaintiffs must lose because Defendants have submitted undisputed evidence of a genuine business necessity for each of the policies under which Plaintiffs were disciplined. As for their disparate treatment claims, Plaintiffs furnished no evidence of unlawful intent or a similarly situated comparator, nor have they shown that Defendants' non-discriminatory rationale for the firings was pretextual. On this record, as further demonstrated below, no reasonable jury could find for Plaintiffs. Summary judgment should be entered for Defendants.

## I. Defendants correctly state the summary-judgment standard.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Once the movant proves both elements, "then the non-movant must set forth specific facts showing there is a genuine

issue for trial." *Dickey v. McDonald*, 238 F. Supp. 3d 1068, 1072–73 (N.D. Ill. 2017). In doing so, the non-movant cannot simply "show that there is some metaphysical doubt as to the material facts." *Mills v. First Federal Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 840 (7th Cir. 1996) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Rather, the non-movant shows that summary judgment is inappropriate only when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Dickey*, 238 F. Supp. at 1073 (citing *Anderson v. Liberty Lobby, In*c., 477 U.S. 242, 248 (1986)).

Plaintiffs' response claims Defendants misrepresent the applicable legal standard. (*See, e.g.*, ECF No. 196, Pls.' Response to Defs' Mot. for Summary J. ("Response"), at 6–8). Plaintiffs contend that "Defendants cannot merely claim no evidence [of discrimination] exists." (*Id.* at 7). Plaintiffs assert that summary judgment should be granted only if Defendants show that discrimination never could happen under any version of events, whether or not evidence exists to support that version. (*Id.* at 7–8; *see also, e.g.*, *id.* at 27 (arguing that a jury could choose to "reject" Defendants' undisputed evidence that Nelson did not immediately report his accident based on the surmise—totally unsupported by evidence—that Nelson might have chosen to report the accident later in the day)). This notion misses the mark by ignoring Plaintiffs' burden to furnish evidence upon which a jury could find in their favor. *See Nigro v. Ind. Univ. Health Care Assocs., Inc.,* 40 F.4th 488, 491 (7th Cir. 2022) (describing plaintiff's evidentiary burden at summary judgment).

The applicable standard is not whether a jury could find for Plaintiffs under *any* potential version of facts consistent with the record, but rather whether the evidence *actually present* in the record creates a disputed fact upon which Plaintiffs could win. *See Mills*, 83 F.3d at 840; *see also Dorsey v. Morgan Stanley*, 507 F.3d 624, 628–29 (7th Cir. 2007) (evidence that employer might have influenced a decision without evidence that it did is not enough to beat summary judgment).

Based on this standard, summary judgment for Defendants is appropriate. Defendants have shown that no material factual dispute exists and that they are entitled to judgment as a matter of law. Plaintiffs have failed to submit evidence upon which a jury could find that Defendants discriminated against them.

**II.    Plaintiffs furnish no evidence that a neutral employment practice caused a disparate impact on African American employees.**

To make a prima facie case of disparate impact, Plaintiffs must produce evidence that (i) Defendants engaged in a specific employment practice that (ii) negatively impacted members of a protected group. *See Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 717 (7th Cir. 2012). As shown in Defendants' opening brief and below, summary judgment is appropriate here because Plaintiffs have failed to furnish evidence on either point.

**A.    Plaintiffs fail to identify a specific employment practice.**

Defendants showed in their opening brief that Plaintiffs' disparate impact claims fail because a challenge to Murry's general discretion in disciplinary decisions is not a challenge to a "specific employment practice." (*See* ECF No. 174-1, Defs' Mem. in Support of Summary J. ("Defs' Mem."), at 6.) Plaintiffs respond that the Supreme Court authorized disparate impact challenges to generalized discretionary decision-making. (Response, at 8–10 (citing *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977 (1988) (plurality opinion)).) But Plaintiffs misapply *Watson*. There, employees challenged the employer's specific practice of using a subjective criterion—scores in an in-person interview—as negatively and disparately affecting Black candidates. The Court allowed the challenge, holding that employees can attack this sort of specific, yet subjective, metric as having a disparate impact on a protected group. *Id.* at 989–93; *see also Meacham v. Knolls Atomic Power Lab*, 554 U.S. 84 (2008) (allowing plaintiffs to make a disparate impact challenge to employer's practice of grading employees on subjective criteria of

3

performance, flexibility, and critical skills when deciding whom to lay off).

Unlike in *Watson* and *Meacham*, Plaintiffs here fail to identify a specific, subjective employment criterion that requires use of discretion and negatively impacts African Americans. Instead, Plaintiffs point only to Murry's general "discretionary decision-making in Defendants' disciplinary process." (Response, at 8–9). Vague notions of discretion in decision-making is neither a specific employment practice nor a specific, subjective employment criterion that can be challenged under a disparate impact theory. *See Welch v. Eli Lilly & Co.*, 585 F. App'x 911, 912–13 (7th Cir. 2014) (dismissing disparate impact claims at pleading stage because "culture of giving supervisors great say in making hiring and discharge decisions, disciplining employees, determining pay raises and . . . giving promotions . . . does not allege that a *specific,* identifiable employment practice caused pay or promotion disparity"); *see also Combs v. Grand Victoria Casino & Resort,* No. 1:08-cv-00414-RLY-JMS, 2008 WL 4452460, at *3 (S.D. Ind. Sept. 30, 2008) (dismissing plaintiffs' disparate impact claims at pleading stage because "subjective decision-making cannot be considered a specific test, requirement, or practice" (cleaned up)).

Plaintiffs rely on *Mozee v. American Com. Marine Serv. Co.*, 940 F.2d 1036 (7th Cir. 1991) to argue the Seventh Circuit has interpreted *Watson* and *Meacham* to imply that all systems of discretionary decision-making can be challenged for causing unintentional discrimination. (Response, at 9.) But *Mozee* says no such thing. There, the Seventh Circuit held only that an employer's practice of giving a single decision-maker (there, the foreman), *complete* discretion over a *single* decision (whom to promote) was a specific, discretionary employment practice that could lead to a disparate impact in promotion decisions. 940 F.2d at 1044. *Mozee* has no bearing on this case because Plaintiffs have not identified a policy by which a single decision-maker has *unbridled* discretion to make a *specific* employment decision. Instead, they challenge Murry's

4

discretion in all discipline decisions, discretion that the record shows is limited and applied differently across a wide range of disciplinary contexts.

For example, undisputed evidence shows: (1) although Murry can excuse absences for child-related reasons (e.g., a parent-teacher conference), only her superior, Klafeta, can excuse absences for other reasons, (Defs' 56.1(c)(2) Response to Pls' Statement of Add'l Facts ("Response to SOAF") ¶ 19); (2) although Murry has discretion to discipline bus drivers who get into accidents, that discretion is based in part on whether the accident was graded "preventable" or "non-preventable," which is information she receives from dispatch supervisors or reporting managers (*id.* ¶¶ 20–21); (3) although Murry can discipline employees for policy violations, such decisions may be thwarted by the union, which may negotiate on behalf of employees for additional chances before discharge (*id.* ¶ 111); and (4) although Murry can recommend termination, that must be approved by her superior, Klafeta (*id.* ¶ 11).

At bottom, Murry's discretion in discipline decisions is circumscribed, varied across disciplinary decisions, and impacted by other actors who play key roles in determining a specific disciplinary outcome. By challenging Murry's discretion across all disciplinary decisions, Plaintiffs do not pinpoint a specific, identifiable practice but rather a mixed bag of varied decision-making practices. Thus, their disparate impact claims fail. *See Watson*, 487 U.S. at 994 (explaining that a plaintiff alleging disparate impact from a subjective policy still is "responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities") (emphasis added); *see also Welch*, 585 F. App'x at 912–13 ("[C]ulture of giving supervisors great say in making [employment] decisions . . . does not allege that a *specific*, identifiable employment practice caused pay or promotion disparity."); *Aberman v. Bd. of Educ. of City of Chi.*, 242 F. Supp. 3d 672, 685 (N.D. Ill. 2017) (defendant allegedly injecting

bias into discipline decisions does not challenge a specific employment practice).

**B.     Plaintiffs fail to produce evidence that Murry's discretion caused a disparate impact.**

In addition to Murry's limited discretion across an array of decisions not constituting a "specific employment practice," no reasonable jury could find disparate impact liability here for a further reason.  Plaintiffs furnish no evidence that Murry's discretion negatively impacted African American employees, or even that African American employees were negatively impacted in discipline results. To make a prima facie case of disparate impact, Plaintiffs not only must identify a specific practice, but also must present "statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." *Puffer*, 675 F.3d at 717. A disparate impact claim relying on a statistical disparity without showing a causal connection fails. *See Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.,* 576 U.S. 519, 542 (2015).

Plaintiffs contend that their raw numerical data show Murry's discretion caused unfair discipline outcomes for African Americans because that data indicates African Americans "fare worse at each stage" of the disciplinary process and "were disproportionality more likely to be suspended than their white counterparts." (Response, at 10). At first blush, this data does appear to show that more African Americans than Caucasian employees were suspended and discharged. (*See id.* at 2, 10; Response to SOAF ¶ 33).  For two distinct reasons, however, no reasonable jury could find from this evidence that Murry's discretionary decision-making caused a disparate impact. First, this evidence is inadmissible. Though Plaintiffs pull their numerical data from a cited "summary" of Pace's voluminous personnel records under Federal Rule of Evidence 1006, (*see* ECF No. 173, Ex. 32), Plaintiffs disregarded the strictures of Rule 1006 because the unidentified author of Plaintiffs' summary (i) exercised judgment in selecting the criteria used in summarizing the data, and

6

(ii) proffers opinions about the legality of the summarized results. This renders Plaintiffs' summary inadmissible. *See, e.g.*, *Swan v. Bd. of Educ. of City of Chi.*, Nos. 13 C 3623 & 13 C 3624 2013 WL 4401439, at *22 n.15 (N.D. Ill. Aug. 15, 2013) (finding a similar "summary" inadmissible as failing to comply with Rule 1006 because the summary's author "exercise[d] his judgment in selecting particular performance data from the progress reports, while excluding others"); *see also United States v. White*, 737 F.3d 1121, 1135 (7th Cir. 2013) (explaining that a summary of voluminous documents under Rule 1006 "must accurately summarize those documents [and …] not misrepresent their contents or make arguments about the inferences the jury should draw from them").

Second, Plaintiffs produce no evidence showing that these raw numerical disparities reflect worse outcomes for African Americans than for Caucasian employees in similar disciplinary situations, or that Murry's discretion caused any such disparity. *See Watson*, 487 U.S. at 997–98 ("[T]he ultimate burden of proving that discrimination against a protected group has been caused by a specific employment practice remains with the plaintiff at all times".) A mere numerical disparity between groups is not, by itself, enough to show causal connection between an employment practice and a disparate impact on a protected group. *See id.* at 997 (explaining by way of example that "statistics based on an applicant pool containing individuals lacking minimal qualifications for the job would be of little probative value"). Here, Plaintiffs furnish data that African Americans were suspended and discharged more often than their Caucasian counterparts, but they submit no evidence upon which a jury could infer these results were because of race, rather than non-discriminatory reasons (e.g., because the number of violations committed by African American employees that warranted suspension and discharge was greater than the number committed by white employees). Plaintiffs present no evidence that African Americans

committed similar violations at similar rates to their white counterparts yet suffered worse consequences. Further, Plaintiffs produce no evidence identifying Murry's discretion as the specific reason that African Americans supposedly receive discipline more often than others. As established above, the undisputed evidence shows that Murry's discretion is only one element influencing a disciplinary decision. Other elements include: (1) whether an absence or "miss out" was excused by Klafeta; (2) whether another supervisory employee graded an accident preventable or non-preventable; (3) whether the employee reported an accident, reported it late, or never reported it; and (4) whether the union chose to negotiate on the employee's behalf. Plaintiffs produce no evidence—nor do they attempt an explanation in their response brief—accounting for these material variables in the discipline outcomes.

Rather than produce evidence or further analysis, Plaintiffs assert that "more robust statistical analysis is not required" because they have shown that over a term of six years, around 20 African Americans were discharged and no non-probationary Caucasian drivers were discharged. (Response, at 10–12). This "inexorable zero," Plaintiffs argue, permits this Court to *assume* that discretionary discipline practices caused a disproportionate, negative impact on African Americans. (*Id.*) The first flaw in this argument is that this "inexorable zero" is entirely manufactured and misleading. Plaintiffs' inadmissible Summary of Pace's Personnel Records (*See* ECF No. 173, Ex. 32), from which this "inexorable zero" is pulled, cherry-picks this six-year period and looks only to discharges of non-probationary Caucasian employees to generate a specific result. (*See* Response to SOAF ¶ 4). The full results from Plaintiffs' own summary show that at least one Caucasian driver's employment was terminated in 2014 alone for failing to meet standards during training, and at least six non-African American employees were fired during this period. (*Id.* ¶¶4, 35). Moreover, cases that infer discriminatory impact from an "inexorable zero"

typically arise in a failure-to-hire context, where no members of a protected group are hired. *See, e.g.*, *EEOC v. O&G Spring & Wire Forms Specialty Co.*, 38 F.3d 872 (7th Cir. 1994). That is not this case. Here, African Americans comprise over 60% of the employees, including dispatch officers, superintendents, and other supervisory staff. (*Id.* ¶¶ 4–5).

Attempting to distract from their lack of evidence demonstrating causation, Plaintiffs claim that a jury could assume Murry's discretion caused a disparate impact because "it is axiomatic that but for Defendants' decision-making in [the discipline] process, no disparity would exist." (Response, at 13). But that is not self-evident in this case. No evidence in the record shows that Murry chose to give Caucasian employees additional chances that Plaintiffs were denied or that her discretion was the linchpin that caused a disparate impact on African Americans at Pace's Heritage Garage. Plaintiffs have the burden of furnishing evidence of this causal connection. *See Watson*, 487 U.S. at 997–98. They have not met it.

### C.   Defendants have not forfeited their business necessity defense.

Because Plaintiffs fail to make a prima facie case of disparate impact, summary judgment on these claims should be entered for Defendants. This conclusion is confirmed by Defendants having produced undisputed evidence that the allegedly discriminatory practice is job related and consistent with business necessity. *See* 42 U.S.C. § 2000e-2(k)(1)(A)(i). The discipline underpinning Plaintiffs' disparate impact claims is based on Pace's policies concerning preventable accidents, failure to report accidents or incidents, and failing to maintain valid driver's licenses. These policies directly relate to Operators safely driving a public bus and Pace's business need to provide safe and timely public transit service. A modicum of discretion in administering these policies does not detract from their validity. *See Coates v. Johnson & Johnson*, No. 78 C 1342, 1982 WL 285, at *52 (N.D. Ill. Apr. 9, 1982).

Plaintiffs do not deny that Pace's disciplinary policies are job-related and consistent with

business necessity. Instead, Plaintiffs contend that Defendants forfeited[1] this affirmative defense by failing to raise it in their Answer. (Response, at 14–16.) Plaintiffs are wrong for two reasons. First, a defendant does not forfeit an affirmative defense when, as here, he raises it in a motion for summary judgment and the plaintiff has "the opportunity to challenge this argument in their own summary judgment submissions." *Glob. Tech. & Trading, Inc. v. Satyam Comput. Servs. Ltd.*, No. 09 C 5111, 2014 WL 4057374, at *2 (N.D. Ill. Aug. 14, 2014) (citation omitted), *aff'd sub nom. Glob. Tech. & Trading, Inc. v. Tech Mahindra Ltd.*, 789 F.3d 730 (7th Cir. 2015). This "prevailing Seventh Circuit rule," *id.* at *3, applies equally to a business necessity defense to a disparate impact claim. *See, e.g., Tabor v. Hilti, Inc.,* No. 09-cv-189-GKF-PJC, 2013 WL 4068781, at *10 (N.D. Okla. Aug. 12, 2013) (business necessity defense is "not necessarily waived by a failure to plead it in an answer, and a defendant may raise it by a motion to dismiss, a motion for summary judgment or by answer" (internal quotation marks omitted)). Because Defendants raised the affirmative defense in their motion for summary judgment, and Plaintiffs had the opportunity to respond to the motion in full, Defendants did not forfeit the business necessity defense.

Second, Plaintiffs were on notice that Defendants planned to use this defense. *See Hendricks v. Lauber*, No. 16 C 627, 2019 WL 194376, at *5 (N.D. Ill. Jan. 15, 2019) (finding no waiver of affirmative defense raised for first time in summary judgment motion where plaintiff "would be hard-pressed to argue he had no notice of [the] defense" given the facts and arguments previously before the court). Here, Plaintiffs were on notice that Defendants intended to argue

---

[1] "Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (cleaned up). Plaintiffs do not contend Defendants intentionally relinquished their business necessity defense (or failure to exhaust, discussed *infra*). Thus, it is more accurate to say that Plaintiffs claim forfeiture on Defendants' part.

business necessity. In Plaintiffs' response to Defendants' motion for judgment on the pleadings, Plaintiffs asserted that their disparate impact claim involved an employment practice that "cannot be justified by business necessity." (ECF No. 37, Resp. to Mot. for J., at 6). Plaintiffs would not have made this point in briefing had they been unaware that Defendants would make such an argument. Additionally, Plaintiffs were aware of all the evidence underpinning Defendants' business necessity defense, including that the allegedly discriminatory policies (requiring a valid driver's license, prompt reporting of accidents, and limiting the number of miss-outs) were safety-related. (*See* ECF No. 173, Defs' Statement of Facts ("Defs' SOF"), ¶¶ 25–32).

> **D.** **Plaintiffs' unintentional discrimination claims under ICRA fail for these same reasons.**

Plaintiffs argue that minor differences in language between the Illinois Civil Rights Act ("ICRA") and Title VII mean they do not have to show a specific employment practice under ICRA. (Response, at 16–17). But Plaintiffs do not cite a single case supporting their argument. (*See id.*) The reality is, as established in Defendants' initial brief, that "Illinois courts 'look to cases concerning alleged violations of federal civil rights statutes to guide [their] interpretation of [ICRA].'" *Weiler v. Vill. of Oak Lawn*, 86 F. Supp. 3d 874, 889 (N.D. Ill. 2015) (quoting *Cent. Austin Neighborhood Ass'n v. City of Chicago*, 1 N.E.3d 976, 980 (Ill. Ct. App. 2013) (collecting cases)). That includes the requirement that Plaintiffs show a specific employment practice to make a prima facie case of disparate impact. The Court should reject Plaintiffs' unsupported contrary argument. Defendants are entitled to summary judgment on Plaintiffs' disparate impact claims.

III.   **Plaintiffs point to no disputed fact upon which a reasonable jury could conclude that Defendants intentionally discriminated against Plaintiffs.**

     A.   **Plaintiffs produce no evidence from which a jury could conclude that Nelson was fired because of his race.**

          1.   **Nelson's claims fail under *McDonnell Douglas*.**

Plaintiff Nelson fails to satisfy two elements of a prima facie case under *McDonnell Douglas*: he cannot show he met Pace's legitimate employment expectations or that he was treated worse than similarly situated comparators. Nelson was not meeting legitimate employment expectations when he ran into another bus in the parking lot and then failed to report the accident. Plaintiffs contend that Nelson could not have reported the accident because he did not actually hit the other bus. (Response, at 26). They purport to furnish evidence that superintendent Caputo—who noticed the accident, took photos of the bus's damage, and reported the accident—admitted that he could see no damage on the buses when looking at photos taken after the accident. (*Id*. at 3, 26). This argument completely misrepresents the evidence.

First, Caputo never said that the photos showed no damage. Rather, he testified that the photos were "too dark" to see the damage, and he further testified that he saw the damage himself (including a large cut on the bus's bumper from the bike rack on Nelson's bus) and he watched video evidence showing that Nelson's bus hit the bus parked in front of it and that Nelson got out of his bus to examine it. (Response to SOAF ¶ 55). This record leaves no dispute about Caputo's honest belief that Nelson hit the other bus.

Second, any factual dispute about whether the accident in the garage actually occurred is immaterial to the outcome at summary judgment. Undisputed evidence shows that Pace investigated the matter and concluded, at the end of the investigation, that Nelson had an accident and failed to report it. (Response to SOAF ¶ 48). Thus, Defendants had a genuine, non-discriminatory reason for firing Nelson. *See Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 940

(7th Cir. 2003) ("It was up to Adams to produce evidence showing that Wal-Mart did not genuinely believe that she [stole from a coworker]. It is not enough for her to show that the investigators might have made a mistake in their conclusion.").

Plaintiffs also contend that a jury could choose to disregard the evidence that Nelson did not report his accident because a jury could conclude that perhaps Nelson would have reported the accident later that day. (Response, at 27). This argument is a non-starter. Plaintiffs produce *no evidence* that Nelson planned to report his accident later in the day. (*See id*.) Accordingly, Nelson fails to show a disputed fact that a jury could resolve in his favor. "[I]nferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Tubergen v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 517 F.3d 470, 473 (7th Cir. 2008) (citation omitted).

In addition to the absence of evidence that Nelson was meeting Pace's expectations by crashing his bus and then failing to report it, Nelson's prima facie case under *McDonnell Douglas* also fails because he does not identify any similarly situated, better-treated comparator outside his protected class. This is an appropriate issue for summary judgment, despite Plaintiffs' statement to the contrary. (Response, at 23). "Whether a co-worker is similarly situated is typically a question for the factfinder, but summary judgment is appropriate where no reasonable jury could find the plaintiff has met her burden." *Langenbach v. Wal-Mart Stores, Inc.*, 761 F.3d 792, 802 (7th Cir. 2014). The Seventh Circuit has repeatedly affirmed summary judgment in favor of an employer where the plaintiff has presented no adequate comparators. *See, e.g.*, *id.* at 802–03; *Oliver v. Joint Logistics Managers, Inc.*, 893 F.3d 408, 412 (7th Cir. 2018); *Barbera v. Pearson Educ., Inc.*, 906 F.3d 621, 631 (7th Cir. 2018); *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 594 (7th Cir. 2008).

That is the case here. Plaintiffs assert in their response that they identified similarly situated comparators. (Response, 27–28). But none of the Caucasian employees they point to—Michael

Rooney, Ray Ulrich, and Marshall Neilson, Jr.—committed the same violations as Nelson. *See Bodenstab v. Cnty. of Cook*, 569 F.3d 651, 657 n.2 (7th Cir. 2009) (explaining that to be similarly situated, comparator must have, among other things, "engaged in the same conduct without differentiating or mitigating circumstances"). Rooney called into dispatch to verbally report an accident that broke his mirror, and he was disciplined for not "immediately" reporting his accident. (Defs' SOF ¶ 49; Response to SOAF ¶ 114). Under the CBA, there is a meaningful difference between reporting an accident late and not reporting it at all (Defs' SOF ¶ 9), so Rooney—who did not "immediately" report his accident—is not comparable to Nelson, who *never* reported it. Similarly, Ulrich called into dispatch right away to report a passenger sleeping on the bus, and he later filed a written report about the incident, but did so belatedly. (Defs' SOF ¶ 45; Response to SOAF ¶ 111). When Neilson Jr.'s accident occurred, he immediately reported it to a supervisor (Caputo) who was on the bus at the time, and filed a report with Caputo "immediately when [they] got back." (Response to SOAF ¶ 109). "None of these other employees' conduct . . . was comparable to" Nelson's, because none completely failed to report a preventable accident. *Bodenstab*, 569 F.3d at 657 n.2. "Therefore, [Nelson] also did not present sufficient evidence that similarly situated individuals" of a different race "were treated more favorably." *Id.*

### 2. Nelson's claims fail under *Ortiz*.

Though Plaintiffs can organize their evidence under *McDonnell Douglas*, the key question is whether a reasonable jury could find that but for race, the employee would not have been discharged. *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 764 (7th Cir. 2016). Plaintiffs have not pointed to evidence that would allow for this. As shown above and in Defendants' Statement of Facts and Response to Plaintiffs' Additional Facts, the undisputed record shows that: Pace has a policy of firing employees who fail to report accidents; Nelson was written up for not reporting an accident that caused damage to his bus; he was investigated for this accident (via video, photos,

and a witness report from Caputo); Murry recommended termination based on Nelson's violating Pace's policies; and Klafeta approved it. (Defs' SOF ¶¶ 9, 18–28; Response to SOAF ¶¶ 47–55). No evidence points to unlawful intent, no evidence shows that Defendants' reason for discharge was pretextual, and no evidence points to a similarly situated employee who was not fired for failing to report an accident. Without such evidence, no triable issue exists to defeat summary judgment on Nelson's intentional discrimination claims under *Ortiz* or *McDonnell Douglas*.[2]

**B.     Plaintiffs produce no evidence from which a jury could conclude that Marshall was fired because of her race.**

Plaintiffs have produced no proof that Marshall met Pace's legitimate job expectations, that she was treated worse than any similarly situated employee, or that Defendants' nondiscriminatory reasons for her terminations in 2017 or 2016 were pretextual.

The undisputed record shows that Marshall was not meeting employment expectations when she was fired in 2017 because she had three preventable accidents in a rolling 12-month period. (Defs' SOF ¶¶ 36–37, 43; Response to SOAF ¶ 76). Plaintiffs maintain that Marshall's claim should survive summary judgment, arguing that at least one of those accidents should have been graded as "non-preventable" because Marshall believes it resulted from her lack of training. (Response, at 25). But Marshall's beliefs about why her accidents happened or how she wanted them graded cannot generate a dispute about the fact that Pace investigated the accidents and *in fact* graded them as "preventable." Hence, no evidence disputes the fact that Marshall had in her personnel record three preventable accidents during one 12-month rolling period, a violation

---

[2] Even Plaintiffs do not contend that their social psychology expert's permitted opinions (ECF No. 197, Pls' SOAF ¶¶ 97–99) create a triable issue in this case. This is not surprising because no evidence whatsoever ties the expert's generalized opinions about stereotypes to Defendants' specific decisions that Plaintiffs allege resulted from intentional discrimination. *See Chambers v. Am. Trans. Air, Inc*., 17 F.3d 998, 1004 (7th Cir. 1994) (finding that under Title VII, "[t]here needs to be a link between a[ ] [company's] manager's alleged prejudice and the decisions that [plaintiff] is challenging").

warranting termination. *See Adams*, 324 F.3d at 940 (employment decision based on honestly held belief, even if mistaken, is not evidence of discrimination).

Nor do Plaintiffs produce evidence from which a jury might infer that this reason for Marshall's termination was pretextual. Plaintiffs say they produced evidence of white employees who were better treated under the discipline system. But none of the employees they identify are similarly situated to Marshall because none had three preventable accidents in one year. *See Bodenstab*, 569 F.3d at 657 n.2 (comparators must have engaged in similar misconduct). Romeo Zamudio did not—his discipline was for not reporting an incident—making him materially dissimilar. (*See* Response, at 29; Defs' SOF ¶ 47; Response to SOAF ¶ 117). Richard Delgado had two preventable accidents, one of which was making contact with a pedestrian. He was not fired, but he did not have three preventable accidents within one year, so he, too, is not comparable. (Defs' SOF ¶¶ 51–52; Response to SOAF ¶ 115). Further, Plaintiffs do not dispute Defendants' evidence that non-African American employees with three preventable accidents in one year were, like Nelson, fired under Defendants' policy. (Defs' Mem., at 16.)

As for Marshall's first termination in 2016, the undisputed record shows that Marshall was not meeting employment expectations when she was fired for failing to report an accident. Plaintiffs contend that, like Nelson, Marshall could not have reported this accident because she did not know it happened. (Response, at 21, 26). But, again, regardless of any factual dispute as to *why* Marshall did not report the accident, the unquestioned record shows that Defendants determined after an investigation that she had known about and not reported the incident, a failure warranting termination under Pace policy. (Response to SOAF, ¶¶ 58, 64, 66). *See Adams*, 324 F.3d at 940 (honest, if mistaken, belief behind employment decision is not evidence of discrimination). Plaintiffs further contend that a jury could infer that this reason for Marshall's 2016 termination

was pretextual because Marshall successfully grieved her termination through Pace's arbitration process. (Response, at 20–21). But an arbitrator's conclusion, that Pace mistakenly found Marshall knew about the accident she did not report, is not evidence that Pace's decision was discriminatory or based on Marshall's race. An honestly-held belief—even if mistaken—is not evidence of discrimination. *Adams*, 324 F.3d at 940.

Plaintiffs produce no other evidence from which a jury could infer that Marshall's 2016 termination was motivated by racial animus. Plaintiffs contend that they pointed to Caucasian employees who did not report incidents yet were not fired. (Response, at 21–23). But none of the employees they identify were similarly situated. Richard Delgado was suspended for being in a second preventable accident during one year, but no evidence shows he violated Pace's reporting policy by failing to report one of those accidents, and so he is not comparable here. (ECF No. 191, Pl's Response to Facts, ¶ 50–52; Response to SOAF ¶ 115). Romeo Zamudio failed only to immediately report an accident, though the undisputed evidence shows he, unlike Marshall, filed his report belatedly. (*Id*. ¶ 117). As for Sosa, the undisputed record shows that although he had three preventable accidents within a year, he resigned before he was fired—an option all employees have to avoid termination. (*Id*. ¶ 116). *See Moss v. Texarkana Ark. Sch. Dist.*, 240 F. Supp. 3d 966, 976–77 (W.D. Ark. 2017) (non-punished employees are "not similarly situated" when they "resigned before [defendant] had an opportunity to administer punishment to them").

As shown above (*see* Section III.A.1, *supra*) Rooney and Ulrich are not similarly situated to Marshall because they each reported their incidents, but did so belatedly, a less severe infraction under the CBA. And Neilson Jr. immediately reported his accident to Caputo, who was on the bus at the time, so that situation is not comparable either. (*See id*.)

Plaintiffs try to evade these material differences by arguing that Marshall's comparators

17

need not be her clones. (Response, at 23). That is beside the point. A plaintiff must show that an employee who committed a similar violation to the plaintiff, but who is not in the protected class, was punished less severely. Marshall failed to produce evidence of a *single* comparator for whom this is the case. There is no evidence of a non-African American employee who totally failed to report an accident but remained employed, nor is there evidence of a non-African American employee who had three preventable accidents in a single year and remained employed.

Plaintiffs also contend a jury could infer discriminatory intent based on statements that Plaintiffs claim they heard other non-party employees make about Murry or Caputo being discriminatory. (Response, at 24). This evidence—out-of-court statements from non-parties offered as evidence of their truth—is inadmissible hearsay that could not be used at trial or relied on by a jury. FED. R. EVID. 802; *see Harris v. Office of the Chief Judge of the Cir. Ct. of Cook Cty.*, 673 F. App'x 537, 541 (7th Cir. 2016) ("Harris did not identify any similarly situated employee who was permitted to delegate a task to another and then avoid punishment when that task went uncompleted. He made only conclusory statements, based on hearsay, that a union steward had told him that other employees were not disciplined in similar situations. Such vague statements are not enough to defeat summary judgment."). The record is bereft of evidence raising a triable issue to defeat summary judgment on Marshall's intentional discrimination claims under *McDonnell Douglas* or *Ortiz*.

### C. Plaintiffs raise no evidence of a discriminatory pattern or practice.

Plaintiffs maintain in their response that they furnished evidence of a pattern or practice of discrimination by marshalling raw numerical data showing an "inexorable zero"—that is, that no non-probationary Caucasian employees were terminated in a span of six years—and by producing data showing that more African Americans were suspended and terminated than their white counterparts. However, as demonstrated above (*see* Section II.B, *supra*) regarding Plaintiffs'

disparate impact claims, Plaintiffs' data is not admissible evidence, and the "inexorable zero" that Plaintiffs say exists is a manufactured number not supported by the wider dataset. For these reasons, and for those stated in Defendants' opening brief, Plaintiffs have failed to show a pattern or practice of intentional discrimination.

## IV. Plaintiffs' IHRA claims should be dismissed for failure to exhaust.

### A. Defendants have not forfeited their failure-to-exhaust argument.

Plaintiffs argue that Defendants have "waived" their failure-to-exhaust argument "by not raising it in its [sic] answer and affirmative defenses or at any point earlier in the litigation." (Response, at 33–34). "Generally, a defendant's failure to plead an affirmative defense results in a waiver of that defense," but "[t]his is not . . . the bright-line rule that Plaintiff[s] argue[ ] it should be." *Neuma, Inc. v. Wells Fargo & Co.*, 515 F. Supp. 2d 825, 850 (N.D. Ill. 2006) (cleaned up). "The Seventh Circuit has repeatedly held that 'delay in asserting an affirmative defense waives the defense only if the plaintiff was harmed as a result.'" *Id.* (quoting *Curtis v. Timberlake*, 436 F.3d 709, 711 (7th Cir. 2005) (per curiam)). Under the "prevailing Seventh Circuit Rule," the "key factor in determining prejudice under Seventh Circuit case law is whether the plaintiff had an opportunity to respond to the argument by, for example, filing a summary judgment response brief. If the plaintiff had such an opportunity, courts typically have found no waiver." *Glob. Tech.*, 2014 WL 4057374, at *2 (collecting cases).

Plaintiffs here had ample opportunity to address Defendants' argument for failure to exhaust in their response to the motion for summary judgment, and they did so. (Response, at 33–35). Additionally, Plaintiffs themselves raised the issue of failure to exhaust earlier in this litigation. In Plaintiffs' reply brief supporting their motion for class certification, Plaintiffs stated: "Courts certify smaller cases where other factors present here make joinder impracticable, such as the potential for retaliation and administrative difficulties of individuals filing EEOC charges *and*

*exhausting administrative remedies* in contrast to the value of recovery (e.g., days' worth of pay for suspended employees)." (ECF No. 130-1 at 8 n.9 (emphasis added)). They did not raise this issue in a vacuum, but rather argued that these situations were "present here" in this case. (*Id.*) Defendants' argument in their motion for summary judgment—that Plaintiffs failed to exhaust their IHRA claims—simply responds to Plaintiffs' own contention earlier in this litigation. Plaintiffs were on notice of this issue and cannot show prejudice.

### B.   Plaintiffs failed to exhaust their IHRA claims.

Defendants' failure-to-exhaust argument shows that Plaintiffs failed to administratively exhaust their IHRA remedies by filing a charge with the Illinois Department of Human Rights (Defs' Mem. at 24–25). Plaintiffs' response confirms that neither Nelson nor Marshall exhausted their IHRA remedies. Plaintiffs contend that Nelson "filed a charge of discrimination with the EEOC," which "cross-filed [the charge] with the [Department of Human Rights]" (Response, at 34), and that the Department eventually issued Nelson a right-to-sue letter. But the evidence on which Plaintiffs rely is a letter from the Department explaining that it "has not received a timely request to review the EEOC determination of no cause" and therefore dismissed the IHRA charge and purported to issue Nelson a right to sue. (*See id.*, *relying on* ECF No. 191, Ex. 87, IDHR Docs).

This letter establishes that Nelson failed to timely forward an EEOC determination to the Department of Human Rights. Thus, it is evidence that he *did not* administratively exhaust his remedies with the Department, even if the letter purports to issue a right to sue. *See Donald v. City of Chicago*, 539 F. Supp. 3d 912, 921–22 (N.D. Ill. 2021) (holding a plaintiff's "failure to forward the EEOC determination to the [Department of Human Rights] within the 30-day period dooms her claim" even though Department issued plaintiff a right-to-sue letter). That is because compliance with the statutory time limit for forwarding the EEOC determination "is a condition precedent to the right to seek a remedy before an administrative body, and . . . a requisite to the

acquisition of [the Department's] subject matter jurisdiction." *Id.* at 921 (collecting cases where "courts have dismissed IHRA claims for lack of exhaustion of administrative remedies" where "plaintiffs have failed to comply with the 30-day notice requirement"). Because the letter that the Department sent Nelson explicitly states that he "failed to timely forward an EEOC determination to the [Department]," the letter establishes that Nelson failed to exhaust his IHRA remedies (Counts VI and VII). Accordingly, his IHRA claims must be dismissed with prejudice. *See id.* (explaining that Department of Human Rights "lacked jurisdiction to review the charge" where the complainant failed to timely forward the EEOC determination and thus that "the notice of right to sue issued by the [Department] was without legal effect").

Plaintiffs' response also fails to establish that Marshall exhausted her IHRA remedies. As evidence of exhaustion, Plaintiffs point only to a letter from the Department of Human Rights informing Marshall that the EEOC cross-filed her charge of discrimination with the Department. (Response, at 34). That letter explains that should Marshall "want the Department to take any further action on [her] charge, [she] must send the Department a copy of the EEOC's findings within 30 days after service of the EEOC's findings." (ECF No. 191, Ex. 87). But no evidence shows that Marshall forwarded to the Department the results of her EEOC charge, a step required for the Department to issue its own determination on the charge and to issue her a valid right to sue letter. *See Donald*, 539 F. Supp. 3d at 921–22. Thus, no evidence exists in the record that Marshall exhausted her IHRA remedies with the Illinois Department of Human Rights. Her IHRA claims (Counts VI and VII) should be dismissed with prejudice.

### C. Defendants' other arguments apply to Plaintiffs' IHRA claims.

Plaintiffs' claim that failure to exhaust is Defendants' "only argument for summary judgment" on Plaintiffs' IHRA claims for unintentional discrimination. (*See* Response, at 32 (emphasis omitted)). Plaintiffs are incorrect. Defendants' motion for summary judgment noted that

"[a]ll Plaintiffs' claims in all eight counts of their Complaint allege race discrimination on theories of disparate impact or disparate treatment." (Defs' Mem. at 1). Defendants then listed four reasons why all "Plaintiffs' disparate impact claims fail as a matter of law." (*Id.*) This includes their IHRA claims for unintentional discrimination. *See Brown v. Ameriprise Fin. Servs., Inc.*, 707 F. Supp. 2d 971, 976 (D. Minn. 2010) ("[D]isparate treatment involves intentional discrimination against an individual (or group of individuals), while disparate impact involves unintentional discrimination." (emphases omitted)). Defendants' arguments for summary judgment on Plaintiffs' disparate impact claims apply with equal force to Plaintiffs' IHRA claims.

## V.     Plaintiffs abandoned their civil conspiracy claim.

Plaintiffs' response brief fails to address Defendants' arguments in favor of summary judgment on Plaintiffs' claim for civil conspiracy under 42 U.S.C. §§ 1985 and 1986 (Count V). (*See* Defs' Mem. at 31). Plaintiffs have thus abandoned that claim--an additional reason why Defendants are entitled to summary judgment on it. *See Kowalczyk v. Walgreen Co.*, No. 03 C 8335, 2005 WL 1176599, at *11 (N.D. Ill. May 17, 2005) (collecting cases).

## VI.    Conclusion

For the reasons demonstrated above and in Defendants' opening brief, the Court should grant Defendants' motion for summary judgment in full and enter judgment in their favor.


Dated: October 7, 2022                          Respectfully submitted,


                                                **PACE BUS SERVICES** and **MARGARET MURRY**

                                    By:     */s/ David L. Weinstein*_____
                                                One of Defendants' Attorneys

David L. Weinstein (ARDC No. 3125588)
dweinstein@taftlaw.com
Rachel L. Schaller (ARDC No. 6306921)
rschaller@taftlaw.com
Benjamin S. Morrell (TBPR No. 035480)
bmorrell@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, Suite 2800
Chicago, Illinois 60601
(312) 527-4000

74985358v2