IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MAURICE NELSON and CHRISTI
MARSHALL,

                  Plaintiffs,

      v.

PACE SUBURBAN BUS, MARGARET
MURRY, in her individual
Capacity, and in her Official
Capacity of Division Manager
of Pace Suburban Bus —
Heritage Division,

                  Defendants.

Case No. 17 C 7697

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Plaintiffs Maurice Nelson and Christi Marshall filed an eight-count Complaint alleging racial discrimination under both Federal and Illinois law (Dkt. No. 69). Counts I, III, and VIII allege disparate impact discrimination under the Civil Rights Act of 1866 ("CRA"), Title VII, and the Illinois Civil Rights Act ("ICRA"), respectively. Counts II and IV allege disparate treatment discrimination under the CRA and Title VII, respectively. Counts VI and VII allege disparate impact and disparate treatment discrimination under the Illinois Human Rights Act ("IHRA"). Count V alleges a civil conspiracy to unlawfully

deprive federally protected rights under the Fourteenth Amendment's Equal Protection clause and the CRA.

Before the Court is Defendants' Motion for Summary Judgment (Dkt. No. 172). For the reasons stated herein, Defendants' Motion is granted in part and denied in part.

## I. FACTUAL BACKGROUND

Defendant Pace Suburban Bus is a governmental body that provides bus and transportation services in the Chicago area. (Defs.' Resp. to Pls.' Stmt. of Add'l. Facts ("DSOF") ¶ 1, Dkt. No. 201.) Plaintiffs Maurice Nelson and Christi Marshall worked as drivers for Defendant at the Heritage Division Garage. (*Id.* ¶ 2.) Defendant Margaret Murry ("Murry") works as the Division Manager for the Heritage Division Garage. (*Id.* ¶ 3.) Murry's job duties include hiring employees, disciplining employees, and ensuring adherence to all Pace policies. (*Id.*) Murry can recommend employment terminations, which are then reviewed by the Regional Manager, Mark Klafeta ("Klafeta"). (*Id.* ¶¶ 6, 13.) Klafeta has never expressed disagreement with any of Murry's decisions to terminate an employee. (*Id.* ¶ 13.) Murry is authorized to terminate a driver in three instances: if a driver has three preventable accidents within a 12-month period, if a driver has a severe accident or engages in serious misconduct, or if a driver fails to report an accident in a timely fashion. (*Id.* ¶¶ 21-23.) While

- 2 -

termination is permitted, it is not mandated in any of these instances. (*Id.* ¶¶ 21–22, 26.)

Plaintiff Maurice Nelson ("Nelson") began working as a part-time bus operator at the Heritage Garage on October 20, 2014. (*Id.* ¶ 38.) Murry initially denied Nelson's promotion to full time bus operator. (*Id.* ¶ 39.) Nelson grieved Murry's decision and became a full-time operator on September 14, 2015. (*Id.* ¶¶ 38-39.) On October 20, 2016, Murry suspended Nelson pending an investigation for failure to report an accident. (*Id.* ¶ 47.) Nelson was terminated on October 25, 2016. (*Id.* ¶ 53.) Nelson grieved his termination, but the termination was upheld. (*Id.* ¶ 57.) Nelson maintains that no accident occurred; Defendants disagree. (*Id.* ¶ 48.)

During Nelson employment, he had several conversations with other employees about Murry's treatment of African Americans. (*See Id.* ¶¶ 41–46.) For example, dispatch supervisor Sheldon Gray told Nelson that Murry blocked attempts by African Americans to promote out of the Heritage Garage. (*Id.* ¶ 41.) Other dispatch supervisors told Nelson that Murry looks to get rid of African American employees and favors Caucasian employees. (*Id.* 43.) In another conversation, a dispatch supervisor told Nelson that Murry was only "messing with you" because he was African American and left the Caucasian drivers alone. (*Id.* ¶ 45.)

Plaintiff Christi Marshall ("Marshall") began working as a part-time bus operator at the Heritage Garage on October 19, 2015. (*Id.* ¶ 56.) Marshall was terminated in September 2016, purportedly for failure to report an accident, however, Marshall successfully grieved her termination and was reinstated. (*Id.* ¶ 58.) On September 12, 2016, Murry suspended Marshall for failure to report an accident. (*Id.* ¶ 63.) Marshall maintains she is unaware of the accident, but was terminated on September 14, 2016. (*Id.* ¶¶ 63-64.) Marshall grieved her termination and was denied, but she was reinstated after an arbitrator found no just cause for the termination. (*Id.* ¶ 67.) On October 3, 2017, Marshall was driving her bus when a man told her that Marshall hit his mirror. (*Id.* ¶ 75.) Marshall investigated the scene, saw that the driver's vehicle had glass missing from the side mirror, but did not see any glass on the ground in the area. (*Id.*) None of the passengers on board reported hearing, feeling, or seeing, an accident. (*Id.*) On October 17, 2017, Marshall was terminated again, this time for having three preventable accidents within a 12-month period. (*Id.* ¶ 76.) Marshall grieved the decision and was denied. (*Id.*) Marshall maintains that she did not have three preventable accidents within a 12-month period. (Pls.' Resp. to Defs.' Stmt. of Facts ("PSOF") ¶ 37, Dkt. No. 191.)

During Marshall's employment, she had conversations with other employees about Murry's treatment of African Americans (DSOF ¶¶ 69—71.) For example, when she discussed her 2016 termination to a dispatch supervisor, he remarked "this has been going on for years," and particularly since Murry started working at the Heritage Garage. (*Id.* ¶ 69.) Another supervisor told Marshall that other African American employees were "lied on" leading to their suspension and termination. (*Id.* ¶ 71.)

The record contains facts about other African American employees filing discrimination claims against Murry. Three former employees made discrimination allegations in a federal lawsuit prior to January 1, 2011. (*Id.* ¶ 77.) Five other former African American employees alleged race discrimination as well. (*Id.* ¶¶ 78, 80.) When asked, Defendant Murry admitted that between 2012 and 2017, thirty employees were terminated; only one was white. (*Id.* ¶ 34.)

## II. <u>LEGAL STANDARD</u>

Summary judgment is appropriate if there is "no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The relevant substantive law governs whether a fact is material. *Id.* When

reviewing the record on a summary judgment motion, the Court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). If, however, the factual record cannot support a rational trier of fact to find for the nonmoving party, summary judgment is appropriate. *Id.* at 380.

### III. <u>DISCUSSION</u>

The Court divides Plaintiffs' claims into four categories: the claims made under the IHRA, the disparate impact claims, the disparate treatment claims, and the civil conspiracy claim.

#### A. The IHRA Claims

Counts VI and VII allege disparate impact and disparate treatment discrimination under the IHRA. The Court separates them from the rest of the analysis because they present a unique procedural issue.

Defendants argue that summary judgment is warranted on these claims because Plaintiffs failed to exhaust their administrative remedies. Failure to exhaust administrative remedies is an affirmative defense. *Mosely v. Board of Educ. Of City of Chicago*, 434 F.3d 527, 533 (7th Cir. 2006). Plaintiffs argue that Defendants have waived their argument by not raising it at a previous point in the litigation. The Seventh Circuit has noted that lack of

exhaustion is usually waivable. *Id., see also Ester v. Principi*, 250 F.3d 1068, 1071 (7th Cir. 2001).

The Seventh Circuit has held that "a delay in asserting an affirmative defense waives the defense only if the plaintiff was harmed as a result." *Curtis v. Timberlake*, 436 F.3d 709, 711 (7th Cir. 2005). In *Curtis*, the Seventh Circuit held that it was not an abuse of discretion to permit a failure to exhaust defense for the first time at the summary judgment. *Id.* The Seventh Circuit has consistently upheld district court's decisions to allow untimely affirmative defenses. *See e.g., White v. Winkleski*, 34 F.4th 617, 626 (7th Cir. 2022); *Lock Realty Corp. IX v. U.S. Health*, *LP,* 707 F.3d 764, 772 (7th Cir. 2013); *Hess v. Reg-Ellen Mach. Tool Corp. Employee Stock Ownership Plan*, 502 F.3d 725, 730 (7th Cir. 2007). Here, the record shows that Plaintiffs knew that they had to exhaust their administrative remedies. In fact, the Plaintiffs provide the Court with their notices from the Illinois Department of Human Rights ("IDHR"), which are a perquisite to filing a state court action. As Plaintiffs knew of their obligations to exhaust administrative remedies, allowing the defense here will not prejudice Plaintiffs.

Illinois law specifies how a complainant must proceed when filing a charge of discrimination with both the Equal Employment Opportunity Commission ("EEOC") and the IDHR. 775 Ill. Comp. Stat.

Ann. 5/7A-102 (A-1) (1); *Baranowska v. Intertek Testing Servs. NA, Inc.,* 2020 WL 1701860, at *3 (N.D. Ill. 2020). If the EEOC investigates the charge first, the IDHR will take no action until the complainant informs the IDHR of the EEOC's determination. 775 Ill. Comp. Stat. Ann. 5/7A-102 (A-1)(1). A complainant has thirty days from receipt of the EEOC's determination to send it to the IDHR. *Id.* Once the IDHR receives the EEOC determination, it will ultimately issue the complainant a right to sue. *Id.* at (A-1)(3).

Here, Plaintiffs failed to exhaust their administrative remedies prior to filing suit. The record shows that Plaintiff Marshall filed a charge with the EEOC. However, the record contains no evidence that Plaintiff Marshall notified the IDHR of the EEOC's determination. Plaintiff Nelson also failed to notify the IDHR about the EEOC's determination of his complaint. Though the IDHR's notice to Plaintiff Nelson contained a right to sue, it was without legal effect because he did not submit the EEOC determination within thirty days. *See Donald v. City of Chicago*, 539 F.Supp. 3d 912, 921 (N.D. Ill. 2021); *Fuit v. N. Illinois Med. Ctr.*, 2022 WL 2905672, at *3 (N.D. Ill. 2022).

Defendants ask the Court to dismiss this claim with prejudice. In cases where courts find failure to exhaust administrative remedies, any dismissal must be without prejudice. *Teal v. Potter*, 559 F.3d 687, 693 (7th Cir. 2009). "[W]hen a district court grants

summary judgment in that situation instead of dismissing without prejudice, we have remanded so that it may correct its mistake." *McHale v. McDonough*, 41 F.4th 866, 872 (7th Cir. 2022). Counts VI and VII must be denied without prejudice; Defendants' Motion for Summary Judgment on these grounds is granted in part and denied in part.

### B. Disparate Impact Claims

Counts I, III, and VIII allege disparate impact discrimination. These claims are based on Defendants' subjective decision-making processes. To prevail on such a claim, a plaintiff must "[identify] the specific employment practice that is allegedly responsible for the statistical disparity. *Id., see also Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 717 (7th Cir. 2012).

Here, Plaintiffs have not pointed to a specific employment practice that they allege created the disparate impact. Instead, Plaintiff cites 42 U.S.C. §2000e-2(k)(1)(B)(i), claiming that the statute "eliminat[es] the need to identify specific employment practice." (Resp. at 10, Dkt. No. 196.) The statute does not eliminate Plaintiffs' obligation to cite a specific employment practice. Instead, the statute provides that if a plaintiff can demonstrate that each element of an employer's decision-making process is not capable of separation for analysis, the entire process may be analyzed as one practice. 42 U.S.C. §2000e-

2(k)(1)(B)(i). Plaintiff argues that Defendant Murry's decisions on when she chose to enforce Defendants' rules and the recommended punishment is a specific employment practice.

The Seventh Circuit held that plaintiffs must do more than attack an overall decision-making process. *Welch v. Eli Lily & Co.*, 585 F. App'x 911, 913 (7th Cir. 2014). In *Welch*, the Seventh Circuit affirmed a district court's dismissal of a disparate impact claim based on a "culture of giving supervisors great say in making hiring and discharge decisions, disciplining employees, determining pay raises and assignments to pay levels, approving lateral and reallocation transfers, giving promotions, and resolving other career development questions." *Id.* 912-13. Here, like in *Welch*, Plaintiffs challenge Defendants' decision to give Murry discretion in disciplinary matters. Other courts in this district have made similar rulings. *Aberman v. Bd. of Educ. of City of Chicago*, 242 F.Supp. 3d 672, 685 (N.D. Ill. 2017) (holding that an allegation that a defendant injected personal biases into discipline and application of policies was not a specific employment practice); *Zmigrocki v. Cook Cnty.*, 2015 WL 500621, at *2 (N.D. Ill. Feb. 4, 2015) (holding that general references to a hiring process with a disparate impact on older and Caucasian workers was insufficient). Here, Plaintiffs do not challenge any specific practice they allege to have caused a disparate impact.

- 10 -

Plaintiffs raise a different argument on their claim under the ICRA, Count VIII of the Complaint. Plaintiffs argue that they are not required to identify a specific policy to prevail on their disparate impact claim under the ICRA. The Court disagrees. Illinois courts have held that the ICRA "was not intended to create new rights. It merely created a new venue in which plaintiffs could pursue in the State courts discrimination actions that had been available to them in the federal courts." *Illinois Native Am. Bar Ass'n v. Univ. of Illinois by Its Bd. of Trustees*, 856 N.E.2d 460, 467 (Ill. App. Ct. 2006). Courts in this district agree, holding that claims under the ICRA also require a plaintiff to identify a specific employment practice. *Weiler v. Vill. of Oak Lawn*, 86 F.Supp. 3d 874, 889 (N.D. Ill. 2015); *Cary v. Ne. Illinois Reg'l Commuter R.R. Corp.,* 2020 WL 1330654, at *4 (N.D. Ill. Mar. 22, 2020); *see also McQueen v. City of Chicago*, 803 F.Supp. 2d 892, 907 (N.D. Ill. 2011). As stated above, Plaintiffs have not identified a specific practice that caused the disparate impact. Defendants' Motion for Summary Judgment is granted as to Counts I, III, and VIII, the disparate impact claims.

### C. The Disparate Treatment Claims

Plaintiffs' disparate treatment claims allege that Defendants intentionally discriminated against African Americans when they suspended and terminated Plaintiffs. The burden shifting framework

the Supreme Court established in *McDonnell Douglas Corp. v. Green* applies here. 411 U.S. 792 (1973). For a plaintiff to make out a *prima facie* case of discrimination they must establish four things: "(1) he is a member of a protected class, (2) he was meeting the employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) similarly situated employees who were not members of his protected class were treated more favorably." *Reives v. Illinois State Police*, 29 F.4th 887, 891 (7th Cir. 2022) (citing *McDonnell Douglas*, 411 U.S. 792 (1973). If a plaintiff prevails, the burden shifts to the defendant to show that there was a legitimate, non-discriminatory reason, for the adverse employment action. *Id.* If a defendant articulates a legitimate reason for the termination, the burden shifts back to the plaintiff to show evidence of pretext. *Id.*

Here, the Defendants concede that Plaintiffs are a member of a protected class and that they suffered an adverse employment action. The parties dispute the fourth element, specifically, whether there are any similarly situated non-African American employees were treated more favorably. Plaintiffs argue that certain non-African American employees were not punished as harshly. Defendants argue that these employees were not similarly situated. The party's opposing positions here is arguably a genuine

dispute of material fact, but the Court need not disentangle these claims now.

In *Ortiz v. Werner Enterprises, Inc.*, the Seventh Circuit held that the standard in a disparate treatment claim is "simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge." 834 F.3d 760, 765 (7th Cir. 2016). When considering these claims, a court should consider the evidence "as a whole." *Id. at* 766. In other words: "[T]he sole question that matters is whether a reasonable juror could conclude that the plaintiff would have kept her job if she he had a different [protected status], and every-thing else had remained the same." *Morris v. BNSF Ry. Co.*, 969 F.3d 753, 763 (7th Cir. 2020).

There is a genuine dispute of material fact about why Plaintiffs were terminated. The parties fundamentally disagree. Defendant contends that it fired Nelson for failure to report an accident. Nelson argues that no accident occurred. Defendant contends that it fired Plaintiff Marshall for having three preventable accidents within a 12-month period. Plaintiff Marshall argues that at least one of these accidents did not occur. Indeed, the entire reason that Plaintiffs bring this suit is because they allege that Defendants terminated them because of their race.

- 13 -

There are facts in the record that support Plaintiffs'
contentions. Plaintiffs point to eight other former employees who
allege that Defendants racially discriminated against them. Murry
also admitted that of the thirty employees terminated between 2012
and 2017, only one was white. Plaintiffs also cite conversations
where several conversations with dispatch supervisors who said
that Defendant Murry favored white drivers and looks to get rid of
African Americans. These conversations provide evidence that
Defendants were terminated due to their race. Defendants argue
that the Court cannot consider these statements because they are
inadmissible hearsay.

A court may only rely on admissible evidence in the summary
judgment stage. *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir.
2009). "A party may not rely upon inadmissible hearsay to oppose
a motion for summary judgment." *Id.* The Court finds that the
statements in question are not hearsay. The relevant statements
were made by dispatch supervisors and qualify as an admission of
a party opponent. Under Federal Rule of Evidence 801(d)(2)(D), a
statement is not hearsay if it was made by an opposing party's
agent on a matter within the scope of the relationship while it
existed. The Seventh Circuit has held that statements by
subordinates are admissible under this rule when they explain a
supervisor's decision to fire an employee. *Baines v. Walgreen Co.*,

- 14 -

863 F.3d 656, 663 (7th Cir. 2017). The statements in question were made by dispatch supervisors, and explain that Murry fired Plaintiffs, and other African American employees, because of their race. At this stage, the Court will consider the statements that the dispatch supervisors made to Plaintiffs about Defendant Murry.

The *Ortiz* standard is satisfied here; a reasonable juror could find that Plaintiffs would have kept their jobs were they not African American. There is a genuine dispute of material fact as to why Plaintiffs were terminated. Defendants' Motion for Summary Judgment on Counts II and IV of the Complaint is denied.

### D. Civil Conspiracy

Count V alleges a civil conspiracy to deprive Plaintiffs of federally protected rights, in violation of the CRA and the Fourteenth Amendment's Equal Protection Clause. Defendants argue that they are entitled to summary judgment on this claim because Plaintiffs have not alleged facts establishing the existence of a conspiracy. Plaintiffs did not address this argument at all in the briefing. Defendants urge the Court to hold that Plaintiffs have waived this claim. The Seventh Circuit ruled that district courts are not to summarily hold for the defendant when a plaintiff fails

- 15 -

to respond on some claims. *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021).

Nevertheless, the record does not contain any evidence suggesting that Defendant Murry conspired with anyone to deprive Plaintiffs of their rights. *See Photos v. Twp. High Sch. Dist. No. 211*, 639 F.Supp. 1050, 1055 (N.D. Ill. 1986) ("the allegation that defendants acted pursuant to a custom and policy cannot support the conspiracy allegation."). There is no dispute of material fact on this point. Defendants' Motion for Summary Judgment on Count V is granted.

## IV. <u>CONCLUSION</u>

For the reasons stated herein, Defendants' Motion for Summary Judgment (Dkt. No. 172) is granted in part and denied in part. Defendants' Motion is granted as to Counts I, III, V, and VIII. Defendants' Motion is denied as to Counts II and IV. Defendants' Motion is partially granted as to Counts VI and VII, and Plaintiffs may refile those counts after curing the defects.

**IT IS SO ORDERED.**

_____
    Harry D. Leinenweber, Judge
    United States District Court

Dated: 3/27/2023

- 16 -